# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| ELENA BEN DAVID, | Civil Action No.: 1:25-CV-00278 |
| Plaintiff, | |
| v. | **COMPLAINT** |
| | **JURY TRIAL DEMANDED** |
| THE ATTORNEY DISCIPLINE OFFICE OF THE NEW HAMPSHIRE SUPREME COURT, | |
| Defendant. | |

## INTRODUCTION

1.    This case arises out of the threatened application of New Hampshire Rule of Professional Conduct 4.4(a) against Assistant Hillsborough County Attorney Elena Ben David.[1]  Rule 4.4(a) fails to pass constitutional muster under the Due Process Clause of the Fourteenth Amendment, Part 1, Article 15 of the New Hampshire Constitution (due process), the First Amendment, and Part I, Article 22 of the New Hampshire Constitution (freedom of speech) both on its face and as it is being applied to ACA Brander by the State's Attorney Discipline Office (the "ADO") because it subjects attorneys to state-imposed penalties using a standard that is impermissibly vague and overbroad and is therefore subject to arbitrary and discriminatory application and enforcement. As applied in this case, Rule 4.4(a) also violates the separation of powers guaranteed by Part I, Article 37, of the New Hampshire Constitution because the rule, which was issued by the judicial branch, impermissibly encroaches on the execution of ACA Brander's prosecutorial duties within the executive branch.

2.    The ADO filed a Notice of Charges (the "Notice") against ACA Brander based on three truthful statements she made as the state prosecutor during a court hearing in an arson prosecution.

---

[1] Attorney Ben David married in 2024 and changed her surname from "Brander" to "Ben David."  She is referenced in the attached exhibits and during most of the events leading to this action as Elena Brander.  For ease of reference and to avoid confusion, Attorney Ben David is referred to as "ACA Brander" throughout this Complaint.

ACA Brander made the statements in direct response to the defendant's counsel's repeated, yet demonstrably false, allegations of prosecutorial misconduct and his insistence that the court sanction her. Defense counsel's ("Attorney Doe")[2] attack on ACA Brander's ethics occurred only after she declined to accept his proposed plea agreement requesting a no-jail disposition.

3.     The crux of Attorney Doe's prosecutorial misconduct claim was that ACA Brander had failed to timely provide police body-worn camera video evidence (the "Videos") to him in discovery.[3] For reasons that remain unclear, in a three-day period, Attorney Doe filed two duplicative motions to compel discovery of the Videos and repetitive requests for sanctions.

4.     Despite such aggressive tactics, Attorney Doe later conceded that he received the Videos and downloaded it to his computer at the outset of the case. In addition, he was forced to acknowledge that had received a second "courtesy" copy of the Videos within one business day of his request for another discovery link. The State thus twice produced the Videos to Attorney Doe on a timely basis and well before he filed the back-to-back motions.

5.     At the hearing on the motions to compel, however, the principal disputed factual issue was whether Attorney Doe had timely received the Videos. Attorney Doe claimed he did not receive the Videos until *after* he had filed his motions. Offering no documentary proof to support that claim, Attorney Doe relied solely on his own statements as a participant in the discovery issue with personal knowledge of the events. ACA Brander maintained that Attorney Doe downloaded the Videos to his computer and viewed it at the outset of the case. She further argued that the State subsequently provided Attorney Doe with a second copy of the evidence *before* he filed his first motion.[4] To support

---

[2] Opposing counsel is not mentioned by name in this Complaint because he has claimed that ACA Brander's statements during the court hearing embarrassed him.

[3] The body-worn camera video evidence consisted of three separate video files and an excel spreadsheet. For ease of simplicity the evidence at issue in this case is referred to as the "Videos".

[4] By the time of the hearing, ACA Brander had provided Attorney Doe with a total of four copies of the Video.  Attorney Doe received two copies *before* he filed the motions and an additional two copies after he filed the motions.

her position, ACA Brander presented documentary evidence from the Hillsboro Police Department ("HPD") setting forth the dates on which it had sent discovery links to Attorney Doe, including the date on which he had downloaded the Videos. Like Attorney Doe, ACA Brander was also a witness to the events and offered her firsthand account of the State's production of the discovery.

6.    By filing the motions to compel, Attorney Doe placed his own credibility in issue. The court was called on to determine (1) whether Attorney Doe had given a truthful account as to *when* he had received the Videos and (2) whether Attorney Doe had a good faith basis to accuse ACA Brander of discovery misconduct and to make the extraordinary sanctions requests.

7.    Before the hearing, Attorney Doe labeled ACA Brander a "passive-aggressive obstructionist" in his second motion to compel. At the hearing, Attorney Doe continued to accuse her of engaging in discovery obstruction because ACA Brander had insisted that he direct his discovery-related e-mails only to her and not to her Assistant or the police. During the hearing, Attorney Doe tried to trade on his experience as a former police officer and prosecutor to suggest the court should rely on his version of the facts as opposed to ACA Brander's account.

8.    It was in this context that ACA Brander sought to discredit Attorney Doe's representations to the court. Regarding his discovery obstruction accusation, ACA Brander informed the court that she did not want Attorney Doe to contact her Assistant because he previously had reduced another Assistant in her office to tears.

9.    Concerning Attorney Doe's effort to bolster his own credibility by touting his credentials as a former police officer and prosecutor, ACA Brander asked the court if it was aware of the circumstances leading to Attorney Doe's departure from the Hillsborough County Attorney's Office (the "HCAO"). ACA Brander did not delve into the details; publicly available information, however, described the circumstances surrounding Attorney Doe's resignation as a prosecutor pursuant to his

agreement with the State to never again serve as a prosecutor or police officer in State of New Hampshire.

10. Finally, ACA Brander made a truthful comment in response to Attorney Doe's convoluted and evasive responses to the court's questions about *whether he received* the Videos and, if so, *when* he received the evidence. She informed the court that Attorney Doe had a history and practice of mismanagement—specifically, client trust account mismanagement—which could explain how he had somehow misplaced the Videos that had been emailed to him twice. It is these statements to the court that the ADO alleges violated N.H. R. Prof. Cond. 4.4(a) because they had the "primary purpose to embarrass" Attorney Doe.

11. The ADO's unprecedented attempt to apply and enforce Rule 4.4(a) under the circumstances of this case has shined a spotlight on the critical flaws of Rule 4.4(a), revealing that the rule is unconstitutional both on its face and as applied to ACA Brander in the ADO's Notice. Rule 4.4(a) indisputably is designed to prohibit categories of speech and conduct and to impose potentially draconian penalties for violations of those prohibitions. But the rule makes the imposition of penalties dependent on a vague and subjective standard ("principal purpose to embarrass") that establishes no meaningful demarcation between permissible and prohibited speech.

12. New Hampshire's version of Rule 4.4(a) is also unique because it discarded the far more rigorous and protective standard set by ABA Model Rule 4.4(a) ("no substantial purpose other than to embarrass"), which is employed by virtually all other states in the Nation. Paradoxically, the New Hampshire Bar Association Ethics Committee's comment on the deviation from ABA Model Rule 4.4(a) states that the Committee proposed the change in the rule "to set a higher objective standard."

N.H. R. Prof. Cond. 4.4(a), Ethics Comm. Comment.[5] In fact, the New Hampshire rule is far more subjective than the nearly universally adopted ABA Model Rule 4.4(a).

13. This pronounced defect of Rule 4.4(a) is particularly troubling when applied to professionals whose duty often requires them to discredit opposing parties and witnesses in an adversarial setting as a matter of routine. Eliciting the truth from the unwilling and attacking untruthfulness is quotidian for criminal and civil litigators. When counsel intentionally challenges a person's credibility, establishes a person's bias, disproves the truthfulness of a person's statements, or exposes a person's unsavory habits, it is unavoidable that the person will be embarrassed.

14. Witness embarrassment from cross-examination and counsel's arguments is commonplace in judicial and administrative adversarial proceedings that occur daily throughout the State. And in many of those proceedings, such as criminal and civil discovery disputes, attorneys are the witnesses. Courts, in turn, are called upon to render determinations on counsels' credibility where their versions of events clash, as they did in this case. Rule 4.4(a) purports to require lawyers to distinguish between permissible intentional embarrassment and impermissible intentional embarrassment on the fly, with potentially ruinous consequences to the lawyer if she misjudges that boundary.

15. This complaint seeks declaratory relief regarding the invalidity of Rule 4.4(a). ACA Brander seeks judicial intervention because the New Hampshire Supreme Court adopted Rule 4.4(a) and its Attorney Discipline Office is attempting to enforce the rule against her. In other words, the Supreme Court through its ADO—both of whom are state actors—are applying Rule 4.4(a) to ACA Brander. Since the New Hampshire Supreme Court has the sole state constitutional authority to adopt rules governing the courts and lawyers, there is no state trial level forum in which ACA Brander may

---

[5] The Ethics Committee's comments are not adopted by the New Hampshire Supreme Court and therefore reflect only the intent of the rule's drafters, not that of the Court.

obtain a declaration of the unconstitutionality of Rule 4.4(a) and thereby receive prompt protection against its enforcement. N.H. Const. Pt. 2, Art. 73-a.

## JURISDICTION AND VENUE

16.  This Court has subject matter jurisdiction with respect to Counts I and III and under 28 U.S.C. § 1331 because the claims arise under the Constitution and the laws of the United States.

17.  The Court has supplemental jurisdiction with respect to Counts II,  IV, and V under 28 U.S.C. § 1367 because these state law claims arise under the New Hampshire Constitution and are so related to the other claims within this Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

18.  Venue is proper in this District under 28 U.S.C. § 1391(b). The defendant was constituted and conducts its operations in the  District, and all of the events or omissions giving rise to the claims occurred in this District.

19.  The Court may award declaratory relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.

## THE PARTIES

20.  Plaintiff Elena Ben David is a member of the New Hampshire bar and serves as an Assistant County Attorney in the Major Crimes Unit of the HCAO.

21.  Defendant the Attorney Discipline Office of the New Hampshire Supreme Court is a division of the administrative office of the New Hampshire courts and is part of the Supreme Court's attorney discipline system.  N.H. Supreme Ct. R. 37.  The ADO, through its general counsel, is charged with receiving, evaluating, investigating, and docketing professional conduct complaints. N.H. Supreme Ct. R. 37(6)(g)(1). The ADO's disciplinary counsel is responsible for assessing and prosecuting such complaints. N.H. Supreme Ct. R. 37(6)(f). The ADO is responsible in the first

instance[6] for the construction and application of the New Hampshire Rules of Professional Conduct

to alleged violations of those rules by New Hampshire attorneys.

## FACTUAL ALLEGATIONS

**A.    THE UNDERLYING CRIMINAL CASE**

*HPD's AXON Evidence System and First Production of the Video Evidence*

22.    On September 15, 2022, the HCAO filed criminal complaints against a defendant for

arson. The case was investigated by HPD, which uses AXON Evidence System software (the

"Platform") in investigations and at crime scenes. HPD officers are equipped with AXON Evidence

body-worn cameras that record evidence as it is observed by the police in live-time at crime scenes.

23.    The Platform electronically stores the evidence and enables HPD to share the body-worn

camera videos with counsel by sending mails from the Platform's website that transmit evidence

download links. The Platform emails are unique and highly distinctive, displaying a black banner with

a yellow pyramid warning sign adjacent to the words **"AXON Evidence.com."** The sender is

identified as **"Axon <noreply@evidence.com>."**

24.    The e-mail often contains a description of what is being transmitted, the case name, and

link's expiration date. An AXON link remains valid for ten (10) days. Defense counsel access the

discovery by clicking onto the link. This downloads the evidence from the link to defense counsel's

computer. Once the discovery is downloaded, there is no further need for the evidence link.

25.    AXON's website maintains a sophisticated, electronic audit system that tracks the exact

time that discovery is transmitted by the police to defense counsel and when defense counsel

---

[6] The attorney discipline system also includes the ADO's staff attorneys and its complaint screening committee, the hearings committee, and the professional conduct committee. N.H. Supreme Ct. R. 37(1)(a). Adverse findings and the imposition of disciplinary measures by the attorney discipline system are appealable to the New Hampshire Supreme Court. N.H. Supreme Ct. R. 37(3)(c) (last paragraph).

downloads the discovery. The system generates logs displaying every time the evidence is accessed, transmitted, and downloaded.

26.  As part of standard practice, the HCAO instructed HPD to provide the body-worn camera footage *i.e.,* the Videos, to Attorney Doe.

27.  On September 29, 2022, at 8:51 p.m., HPD sent the Videos to Attorney Doe through an email link. The Platform recorded the email as being received at 8:52 p.m. and that he downloaded a copy of the Videos to his computer the next day. *See* Evidence Audit Log, attached as Exhibit 1.[7]

28.  On October 4, 2022, Attorney Doe emailed ACA Brander, her Assistant, and HPD confirming that he received the Videos.

29.  In her reply to this email, ACA Brander requested that Attorney Doe send discovery requests only to her and not to her Assistant or the police. She made this request both to maintain awareness and control over discovery and because Attorney Doe had previously reduced a member of the HCAO's support staff to tears.

### Failed Plea Discussions

30.  On October 12, 2022, Attorney Doe emailed ACA Brander to seek a lenient pre-indictment plea. In the email, he noted that he had reviewed the Videos with his client. Attorney Doe conveyed that his client would "entertain" a misdemeanor conviction with no incarceration, but she would not plead to a felony. Exhibit 2. Attorney Doe later confirmed that he reviewed the Videos with his client during a meeting on October 12, 2022, three days after the original link expired.

31.  On November 22, 2022, ACA Brander sent a felony plea offer by email to Attorney Doe. The State agreed to recommend that the defendant serve a jail term of one year on a guilty plea to a felony charge. Attorney Doe replied that his client rejected the plea and would request a trial date.

---

[7] Given the nature of the ADO's claims against ACA Brander and Attorney Doe's claim that ACA Brander embarrassed him, several exhibits to this complaint contain redactions.

*HPD's Production of a Second "Courtesy" Link to Attorney Doe*

32.  On November 25, 2022, Attorney Doe emailed ACA Brander and her Assistant requesting that she re-send the link to the Videos as the prior link expired.

33.  On Monday, November 28, 2022, ACA Brander replied reminding Attorney Doe to send discovery requests only to her and not her Assistant. Attorney Doe responded by questioning whether her request was "your policy or an official policy." He also requested her to resend the link "ASAP."

34.  At approximately 2 p.m., ACA Brander's Assistant, at her request, emailed HPD requesting the police to resend the link to Attorney Doe, with Attorney Doe and ACA Brander copied on the email.

35.  On November 28, Attorney Doe knew (1) the State had agreed to provide him with another discovery link; (2) the HCAO had requested HPD to send the discovery link on the first business day following his request; and (3) HPD was the party that would send the link to him through the Platform.

36.  That afternoon and evening, Attorney Doe emailed ACA Brander and her Assistant "FYI—I did not receive anything yet." ACA Brander replied "for the third time, I am asking you to send your discovery requests to me. If this happens again, I will take it up with the Court."

37.  Attorney Doe replied: "You do not dictate who I send emails to…feel free to file a motion and waste time…."[8]

38.  On Monday, November 28, 2022, at 9:18 p.m., HPD emailed Attorney Doe a second link, using the Platform.

---

[8] True and accurate redacted copies of e-mails pertaining to the Videos and correspondence between Attorney Doe and the State are attached as Exhibit 3.

39.   The e-mail (1) provided the defendant's name, (2) stated the link was to "download body-cam footage," and (3) warned that it was only valid for 10 days. At 9:19 p.m., Attorney Doe received the download link, as detailed on the audit log report attached as Exhibit 1.

40.   On November 29, 2022, Attorney Doe nevertheless accused ACA Brander in another email of failing to provide a second link to him, claiming she was "moving slowly" and trying to "make things difficult."  Exhibit 4.

41.   On the night of November 29, 2022, ACA Brander replied to Attorney Doe, stating HPD had been asked to resend the link (i.e., "We have asked Hillsborough to resend you the [Videos]").

### *"Counsel's" First Motion to Compel and the State's Objection*

42.    On Wednesday night, November 30, 2022, Attorney Doe filed "Counsel's Motion to Compel Discovery and for Sanctions" (the "First Motion") which alleged a discovery dispute based on Attorney Doe's claim that he had not received the second link. The First Motion failed to mention Attorney Doe's prior receipt, download, and viewing of the Videos. The motion alleged that Attorney Doe did not have access to the Videos, that ACA Brander refused to provide him with a second link, that the State had violated the defendant's constitutional rights by not producing the Videos, and that ACA Brander should be sanctioned for prosecutorial misconduct.

43.   ACA Brander filed the State's Objection to the motion to compel and attached an email from HPD setting forth the chronology of its two productions of the Videos to Attorney Doe, as described above.  Exhibit 5.

44.   Records of the Hillsborough Superior Court E-File system confirm that on December 1, 2022, at 6:54 a.m., Attorney Doe accessed the State's Objection that included the production chronology. Exhibit 6.

45.   At 10:35 a.m., Attorney Doe emailed ACA Brander reiterating that he did not have the discovery link. Attorney Doe later explained that, in response to HPD's email, he searched his email

system for the link but was unable to find it because he "used the wrong search parameters." Despite the records demonstrating that Attorney Doe had received, downloaded, and viewed the Videos, ACA Brander provided a third copy of the Videos on DVD by mail to Attorney Doe on December 2, 2022.

*"Counsel's" Second Motion to Compel*

46.  On December 2, Attorney Doe filed a second "Counsel's" motion to compel (the "Second Motion"), again requesting sanctions against ACA Brander – while the First Motion was pending before the court.

47.  In the Second Motion, Attorney Doe admitted that he previously downloaded "some evidence," did not disclose *when* he had downloaded the evidence, and claimed that he could not now find it on his computer.

48.  The Second Motion did not acknowledge that the State had provided him with a second link to the Videos. Instead, he implicitly accused ACA Brander of aberrant behavior and a "passive-aggressive obstructionist approach" and stated that, "Given the lack of professional courtesy, Counsel is no longer willing to accept discovery via email…"

49.  Attorney Doe later admitted at a hearing that he would not have filed the Second Motion if he had seen the production chronology attached to the State's Objection. The Hillsborough Superior Court E-File system, however, establishes that he reviewed the objection on December 1, 2022, at 6:54 a.m., a full day before he filed "Counsel's" Second Motion to compel.  Exhibit 6.[9]

50.  On December 2, 2022, at approximately 4 p.m., ACA Brander sent a fourth production of the Videos to Attorney Doe by a Microsoft OneDrive link, which Attorney Doe accessed on December 3, 2022.

---

[9] Even in the unlikely event that Attorney Doe did not carefully evaluate "Exhibit A" or the State's Objection, he received a copy of the pleading and had constructive notice of "Exhibit A."

## *The Dispositional Conference*

51.  The Dispositional Conference in the arson case was held on December 6, 2022.  The court asked whether counsel had an opportunity to discuss a resolution. After ACA Brander reported the status of the parties' unsuccessful plea negotiations, Attorney Doe requested the court to schedule a criminal mediation. ACA Brander objected to mediation, and referred the court to Attorney Doe's two motions and the State's Objections, noting they might inform the court on why a mediation would be unproductive. ACA Brander specifically suggested that the court review "Exhibit A" of the State's Objection.

52. The court had not read the pleadings and quickly reviewed them. It then addressed the merits of the motions, asking questions to both counsel and permitting argument by the parties.

53.  At this phase of the hearing, Attorney Doe was not only counsel for the defendant, but also was the sole witness for the defense. The same held true for ACA Brander, who likewise proceeded by proffer on behalf of the State.

54.  As the defense's only witness, Attorney Doe's credibility, professional competency, and ethical character were at issue because (1) he filed two motions laden with erroneous facts; (2) he failed to disclose material information to the court related to the motions to compel; (3) he failed to correct his pleadings; (4) he failed to withdraw his pleadings before or during the Dispositional Conference; and (5) he unjustifiably attacked the prosecutor's ethics and credibility without a factual or legal basis.

55.   The Court initially focused on "Exhibit A," HPD's e-mail, and questioned Attorney Doe about his representation that the discovery link had expired:

> [I]n this Motion, you say that the link to the – this is for the body cam; right, has expired and in the State's Objection, they provide an affidavit from the police saying the link was good until December 8th.

56.  Attorney Doe did not directly answer the question, and attempted to change the subject while making a personal attack on ACA Brander as follows:

Correct, sir. So, um, there's a lot to say here. So, um, I want to talk about their objection to mediation. **I'm not going to let this degenerate into juvenile sniping.** Um, I reject all of her arguments about the way I supposedly treat her. That's completely not true (emphasis supplied).

57.  The court then commented that the link was "good until December 8th" and was "still good for two more days." The court directly asked Attorney Doe, "Is that true?" Again, Attorney Doe did not answer the question and failed to admit he ever received the Videos.

58.  The court then commented, "It seems to me, he [Attorney Doe] needs to get a link" to which Attorney Doe stated, "I have it, sir. I have it. I have it."

59.  The court continued, asking Attorney Doe when he had received the link. Attorney Doe did not answer this direct question, claiming that he did not have the link when he filed his Second Motion on December 2, 2022. He then contradicted this claim, stating ACA Brander sent him a Share File link *before* he filed the Second Motion, but he did not see it until *after* he had filed the Second Motion. Attorney Doe's statement could only be understood as arguing that the First Motion had triggered the State's production of the Videos, a claim belied by the facts.

60.  Throughout the conference, Attorney Doe maintained that ACA Brander had failed to timely produce the Videos, never admitting that he and his client had previously downloaded and watched the Videos before he filed either motion. Instead, Attorney Doe pursued his claim that ACA Brander delayed or obstructed the production of evidence, stating that it was "just a ridiculous process to get [the Videos]."

61.  The two motions sought to discredit ACA Brander. Attorney Doe led the Superior Court to believe that she was an "obstructionist" who had forced him to seek judicial redress to obtain evidence. He also attacked her credibility and ethics before a full courtroom during the conference.

62.  Immediately following Attorney Doe's comment "that it was just a ridiculous process to get it," ACA Brander requested the Court's permission to respond.

63.    Attorney Doe's statements that obtaining the link was a "ridiculous process" and that she was a "passive-aggressive obstructionist" referred to ACA Brander's repeated requests that he send his discovery requests only to her—not to her Assistant or the police.

64.    ACA Brander explained that the State had sent the Videos to Attorney Doe in September 2022 and he downloaded it at that time; that he requested a second discovery link on non-business day; that her Assistant emailed HPD the next business day requesting HPD to resend the discovery link to Attorney Doe.

65.    In direct rebuttal to Attorney Doe's claim regarding the process and her being a "passive-aggressive obstructionist" ACA Brander explained that she had encountered problems with Attorney Doe during the discovery process because he had refused to honor her repeated requests to submit his discovery requests only to her and not to non-lawyer personnel, including her Assistant and the police. She also justified her conduct by stating "And for the record, he's made an assistant in our office cry in the past. So, I have a legitimate reason for making that request" which the ADO has alleged is one of the three statements which violate Rule 4.4(a).

66.    To counter Attorney Doe's position that he had not timely received the second link, ACA Brander demonstrated to the court that the Videos had been sent to Attorney Doe multiple times and that he had actually viewed the Videos months earlier. She then sought to show that Attorney Doe was habitually careless in his law practice and cited as an example that Attorney Doe had been "recently reprimanded because of [sic] his trust account was out of compliance by fifteen thousand dollars."[10] ACA Brander offered this example of carelessness and disorganization in response to Attorney Doe's assertion that she had unlawfully and unethically interfered with his client's discovery

---

[10] The court record concerning the details of Attorney Doe's 2019 Reprimand, which was recently annulled, was publicly available for several years on the New Hampshire Supreme Court's ADO website.  The publicly available records of the Reprimand indicated that Attorney Doe had mishandled several clients' funds over a period of several years and had failed to properly maintain records of those funds as required by N.H. R. Prof. Conduct 50.

rights and should be sanctioned as a result. The issue before the court was whether Attorney Doe had received the Videos and if not, why not. Attorney Doe's theory was that ACA Brander had simply stonewalled and refused to produce the Videos. ACA Brander's theory was that Attorney Doe had repeatedly been given the Videos and, assuming he was not simply being untruthful, the explanation for why he could not locate it lay in his carelessness and disorganization. The ADO nonetheless has alleged that the reference to the then-public record of Attorney Doe's reprimand for carelessness and mismanagement of his client trust account had "the principal purpose of embarrassing" Attorney Doe.

67.   Indeed, Attorney Doe has since represented to the ADO that (1) he could not locate the previously downloaded Videos; (2) he lost or "misfiled" the downloaded evidence; (3) he cannot keep pace with modern technology; and (4) he inadvertently loses discovery.

68.   Attorney Doe then attempted to bolster his credibility by stating that he had served as a police officer and prosecutor, thereby implying that the court should credit his account over ACA Brander's.

69.   ACA Brander considered these representations as misleading because she knew that Attorney Doe had resigned from his position as a prosecutor at the HCAO as part of his resolution of a publicly reported matter with the State whereby Attorney Doe and the State agreed that he would never serve the State of New Hampshire as a prosecutor or police officer again.  Accordingly, ACA Brander responded to Attorney Doe's representation by stating, "I just wonder if the court is aware of which the circumstances under which [Attorney Doe] left the Hillsborough County Attorney's Office." This is the third statement that the ADO has alleged had "the principal purpose of embarrassing" Attorney Doe.

*Attorney Doe's Admission that He Received the Link*

70.   On December 8, 2022, just two days after the Dispositional Conference, Attorney Doe emailed ACA Brander and her supervisor, admitting that he had, in fact, received the link that HPD

16

had sent him on November 28, 2022. He claimed that he "must have inadvertently deleted" the link and had "just" found it in his "email trash" file. Attorney Doe promised to "file a pleading to correct the record on various issues the State raised" and he would "note this fact." In the same e-mail, Attorney Doe requested ACA Brander's supervisor to conduct an "internal review" of her.

71.    That day, ACA Brander filed a Supplemental Objection to "Defense Counsel's" motions to compel and attached a copy of Attorney Doe's e-mail in which he admitted that he had received the link to the Videos. The Supplemental Objection requested the court to deny both motions to compel and requests for sanctions.

72.    Later that day, Attorney Doe filed a response to the State's Supplemental Objection. The response, however, failed to confirm his receipt of the second link he claimed to have located in his "email trash."

73.    Three days later, on December 11, 2022, Attorney Doe finally acknowledged to the court that he previously downloaded the Videos and received the second link the State sent to him on November 28, 2022. He requested withdrawal of both motions, which the court already had denied.[11]

74.    On December 12, 2022, shortly after Attorney Doe requested ACA Brander's supervisor to conduct an internal review of her, he filed a grievance against ACA Brander with the ADO requesting that it investigate her, too.

**B.    THE NEW HAMPSHIRE ATTORNEY DISCIPLINARY SYSTEM**

75.    Attorneys admitted to practice law in New Hampshire are subject to the disciplinary jurisdiction of the New Hampshire Supreme Court and its Attorney Discipline System.  N.H. Sup. Ct. R. 37(1)(b).

---

[11] On December 12 and 14, 2022, the court issued its written Orders, dated December 6 and 9, respectively, denying both of Attorney Doe's two motions to compel and requests for sanctions. The Order dated December 6 stated that the Court was "not persuaded that any delay by the State in producing the link would warrant the imposition of sanctions." The Order dated December 9 denied the second motion as "moot given counsel's receipt of the request [sic] information."

76. The New Hampshire Attorney Discipline System exists within the New Hampshire Supreme Court's Administrative Office of the Courts and is part of the State's Judicial Branch of government. It has four parts: (1) the ADO, (2) the Complaint Screening Committee, (3) the Hearings Committee, and (4) the Professional Conduct Committee. N.H. Sup. Ct. R. 37(1). The Complaint Screening Committee is a sub-committee of the ADO.

77. The Attorney Discipline System regulates the conduct of New Hampshire lawyers by applying the Rules. The Rules constitute "the disciplinary standard for New Hampshire lawyers." N.H. R. Prof. Conduct, "Statement of Purpose." The Rules are promulgated and amended by the New Hampshire Supreme Court.

## C.    NEW HAMPSHIRE RULE OF PROFESSIONAL CONDUCT 4.4(a)

78. The applicable Rule in this case is N.H R. Prof. Conduct 4.4(a). Rule 4.4(a) is based on a modified version of Model Rule 4.4(a) of the American Bar Association's "Model Rules of Professional Conduct."

79. ABA Model Rule 4.4(a) prohibits lawyers from using "means that have no substantial purpose other than to embarrass, delay, or burden a third person, or use methods of obtaining evidence that violate the legal rights of such a person."

80. With the exception of New Hampshire, the version of ABA Model Rule 4.4(a) in effect in every other state in our Nation and the District of Columbia adopts the **"no substantial purpose other than"** language from ABA Model Rule 4.4(a).

81. The "no substantial purpose other than" language of ABA Model Rule 4.4(a) requires state bar disciplinary authorities to rule out all other "substantial" purposes for lawyer speech before censoring that speech.  Forty-six (46) states also define the term "substantial."

82. New Hampshire's version of Rule 4.4(a), however, uses a far broader **"primary purpose to"** standard. N.H. R. Prof. Conduct 4.4(a) provides that: "In representing a client, a lawyer shall not

take any action if the lawyer knows or it is obvious that the action has the **primary purpose to** embarrass, delay or burden a third person" (emphasis added).

83.  By employing different standards to identify prohibited speech, there is a vast difference between what constitutes permissible speech by attorneys in forty-nine states and the District of Columbia, and what constitutes permissible speech by attorneys licensed in New Hampshire.

84.  New Hampshire's minority version of Rule 4.4(a) is an aberration.  It erroneously assumes that speech necessarily has a so-called "primary" purpose.  It also is the only jurisdiction where speech made with *one or more* "substantial" purposes is nevertheless censored if the ADO, the Complaint Screening Committee, Hearings Committee or Professional Conduct Committee decides that its so-called "primary" purpose is a prohibited one.

85.  New Hampshire's Rule 4.4(a) also fails to define "primary," a word with many connotations and meanings.  The first definition of the word "primary" in Webster's Third New International Dictionary Unabridged, Kindle Edition, is "something that stands first in order, rank, or importance."[12]

86.  These definitional terms necessarily find their meaning in subjective, and therefore arbitrary, values and beliefs. Just as two people often see and hear different things when examining a single work of art or a piece of music, so too will members of the same audience, upon hearing the same speech, have different so-called "primary" reactions depending on their own subjective values and beliefs.

---

[12] Another source, the Oxford English Dictionary, provides that "[t]here are **49** meanings listed in [Oxford English Dictionary's] entry for the word *primary*, one of which is labelled obsolete" (emphases in original). First, in the "[g]eneral sense[]," the Oxford English Dictionary defines "primary" as "[o]ccurring or existing first in a sequence of events; belonging to the beginning or earliest stage of something; first in time." Second under the "general sense" category of definitions, "primary" is defined as "[o]f the highest rank or importance; principal, chief." Third, in the "general sense," the term "primary" is defined as "not subordinate to or derived from anything else; that is the source or cause of something; fundamental; original." Fourth, in the "general sense," "primary" is defined as "[n]ot involving intermediate agency; immediate, first-hand; that is a direct result of something. Now chiefly in technical and specialist senses: cf. A.II."

87.   Nor does Rule 4.4(a)'s addition of the word "obvious" clarify its ambiguity.  For example, certain popular music is "primarily" and "obviously" enjoyable to a large population of reasonable minds. To another group of entirely reasonable minds, the same music might "primarily" appear to be offensive and embarrassing. No one of the two groups is "obviously" right.

88.   The same holds true for certain legal arguments. The argument that a woman has a legal right to choose whether or not to carry a pregnancy to term is not obviously intrinsic to a large population of people.  To another group of reasonable minds, the same legal argument might "primarily" appear to be sacrilegious and burdensome.  Additionally, a criminal defense attorney's argument that policework as inherently and systemically racist may resonate for large populations of reasonable minds.  To another group of reasonable minds, the same message may appear primarily offensive and interposed for purpose of delay.

89.   Often, no single viewpoint is "obviously" right. One's primary perceptions of the same music, painting, message, and legal argument, therefore, often will necessarily contradict the primary perceptions of other reasonable minds depending upon their subjective beliefs and values.

90.   In an apparent recognition of this defect, at a public meeting of the New Hampshire Supreme Court Committee on Rules, on September 10, 2021, one lawyer attested that he was working with the ADO to draft a proposed amendment that would define the meaning of "primary purpose." That amendment never occurred.

91.   Instead, "primary purpose," by definition, continues to proscribe conduct committed with a legitimate, proper, or material purpose. As long as laypeople comprising a hearings panel designated by its Chair determine that, in their subjective view, the "*primary* purpose" of a lawyer's *speech* was to embarrass, delay, or burden a third person, then that panel hypothetically might find that the lawyer's speech violated Rule 4.4(a).

92.  Rule 4.4(a) makes no provision for a hearings panel's consideration of First Amendment principles,[13] nor does it explain how to apply due process principles for a lawyer whose speech occurred in the context of a hearing on motions for sanctions against that lawyer.

93.  The Rule does not define whose view governs in deciding the "primary purpose" of otherwise constitutionally-protected speech, although the New Hampshire Supreme Court has recently elucidated that it may be from the viewpoint of *any* "reasonable" person, including an unrepresented opposing party, and need not even necessarily be viewed from the perspective of a lawyer or a judge.

94.  The Rule's "primary purpose" language is inextricably intertwined with both possible applications of the rule. In recent years, the Professional Conduct Committee has made clear that Rule 4.4(a) can apply (1) when a lawyer "knows" the action's "primary purpose" is to embarrass, delay or burden; or, (2) under a second, "objective" standard, when it is "obvious that the primary purpose of [an attorney's action] … was to [embarrass, delay or burden]." *Appeal of Hoppock*, No. LD-2024-0005, 2025 WL 1185193, at *2 (N.H. Apr. 24, 2025).

95.  The Rule provides no guidance on how to balance Rule 4.4(a) against speech a lawyer is required to make to satisfy other ethical obligations.

96.  The Rule neither defines nor provides examples of "embarrassing" or "burdening" speech, or speech made with the "primary purpose" to delay.

97.  The Rule does not explain how to apply the doctrine of collateral estoppel in cases in which an opposing counsel's claim that the lawyer acted discourteously, or for the purpose of delay,

---

[13] Notably, N.H. R. Prof. Conduct 8.4(g) does reference constitutionally protected speech. Rule 8.4(g) provides, in pertinent part, that it does not "preclude a lawyer from engaging in conduct or speech or from maintaining associations that are constitutionally protected…." Rule 8.4(g) contains language that is a near-mirror image of the language in Rule 4.4(a), in that it proscribes action "if the lawyer knows or it is obvious that the action has the primary purpose to embarrass, harass or burden another person."  On January 25, 2024, the ADO stated Rule 8.4(g) did not govern ACA Brander's conduct.

embarrassment or burdening, was denied by the trial court and fully withdrawn by the opposing counsel, as in this case.

98.  Moreover, the ADO has publicly taken the position that Rule 4.4(a) is inapplicable to State prosecutors. Specifically, on April 12, 2024, at a training session conducted by the ADO for State prosecutors, ADO General Counsel Brian R. Moushegian represented that prosecutors would not encounter Rule 4.4(a) because the rule did not apply to them.

## D.    ACA BRANDER'S REPLY AND CROSS-GRIEVANCE

99.  In his Grievance submitted on December 12, 2022, Attorney Doe claimed that ACA Brander set out to "embarrass and harass" him during the Dispositional Conference in violation of Rule 8.4(g), not Rule 4.4(a).

100. On December 30, 2022, ACA Brander submitted a Reply and Cross-Grievance describing the salient facts set forth in this Complaint accompanied by documentary evidence.

101. The Reply and Cross-Grievance alleged that Attorney Doe knowingly and purposefully committed violations of several Rules of Professional Conduct. *See* Reply and Cross-Grievance, attached as Exhibit 7.  The ADO took no action on the Reply and Cross-Grievance for six months.

102. Attorney Doe filed a brief response to ACA Brander's Reply and Cross-Grievance. His response failed to rebut or even clarify his actions.

103. On June 21, 2023, six months after the Reply and Cross-Grievance was filed, ADO General Counsel Moushegian sent a letter to ACA Brander notifying her that the ADO was docketing Attorney Doe's Grievance against her.  No complaint or notice of charges was issued to ACA Brander at the time.

104. Although the ADO decided not to act on ACA Brander's Cross-Grievance against Attorney Doe at that time, it did not disclose this information to her.

105. Finally, a meeting occurred between ACA Brander and Disciplinary Counsel on January 25, 2024, at ACA Brander's request. During the meeting, Disciplinary Counsel informed ACA Brander that Rule 8.4(g) did not "govern" her conduct.

106. By September 2024, the ADO had not initiated formal charges against ACA Brander or acted on ACA Brander's Cross-Grievance. On September 9, ACA Brander sent the ADO a Resubmitted and Renewed 2022 Grievance Against Attorney Doe and requested a response.

107. It was only at this juncture on November 3, 2024, that Attorney Doe submitted a lengthy Response, in which he admitted deleting e-mails from his inbox and e-mail trash file as well as other "materials" from his computer hard drive:

> I used to delete the emails since the links expired. That habit has since changed. Also, it was part of my practice to periodically delete all emails in my trash bin permanently. **This email cleanse was not performed according to a fixed schedule.** Instead, I tried to keep my Gmail account running efficiently when I received periodic warnings about allocated storage space. Finally, I deleted materials from my desktop hard drive to make more room for additional discovery (emphasis supplied.)

108. On December 17, 2024, nearly two years after ACA Brander had filed her Cross-Grievance, the ADO sent a letter to her disclosing that it did not intend to take any action on it. The decision erroneously characterized ACA Brander's Cross-Grievance as having been first filed September 9, 2024, and made no reference to any investigation or evidentiary hearing having been conducted before the dismissal. The ADO never made any decision as to the original Cross-Grievance.

109. On December 27, 2024, ACA Brander timely filed a Motion for Reconsideration of the decision with the Chair of the Complaint Screening Committee under N.H. Sup. Ct. R. 37A(VI)(a), which remains pending as of the date of this filing.

110. That same month, the Professional Conduct Committee annulled Attorney Doe's 2019 reprimand.

### E.     THE NOTICE OF CHARGES

111. Approximately two and one-half years after Attorney Doe filed his Grievance and ACA Brander filed her Reply and Cross-Grievance, the ADO instituted formal disciplinary proceedings against ACA Brander in a matter entitled *Brander, Elena M. advs. Attorney Discipline Office*, No. 23-013.[14] On March 27, 2025, the ADO issued a Notice of Charges ("NOC") alleging that three comments that she made during the Dispositional Conference on December 6, 2022 violated Rule 4.4(a).  A redacted copy of the NOC is attached as Exhibit 8.

112. The Notice of Charges allege that ACA Brander violated Rule 4.4(a) when she spoke as follows:

- "for the record, he's made an assistant in our office cry in the past" (NOC ¶79)

- "[s]he represented during the Hearing that [Attorney Doe] had a disciplinary history and was out of compliance in his trust account by $15,000" (NOC ¶80)

- "[s]he asked the court if it was aware of the circumstances under which [Attorney Doe] left the Hillsborough County Attorney's Office" (NOC ¶81)

113. The Notice of Charges alleges that ACA Brander made these statements "because she knew, or it was obvious that such action had the primary purpose to embarrass, delay or burden" Attorney Doe, in violation of Rule 4.4(a) (NOC ¶¶79-81).

114. Well before the ADO issued the Notice of Charges, its General Counsel advised State prosecutors that Rule 4.4(a) did not apply to them. This occurred on April 12, 2024, during which ADO General Counsel Moushegian conducted a statewide training session for state prosecutors moderated by Assistant Attorney General David Rotman, which was attended by State prosecutors, including ACA Brander.

---

[14] The ADO filed the Notice of Charges 79 days after annulling Attorney Doe's public reprimand.  ACA Brander's reference to the reprimand is one of the three alleged violations of Rule 4.4(a) in the Notice of Charges.

115. During the session, General Counsel Moushegian specifically addressed the question whether Rule 4.4(a) applied to state prosecutors, taking the position that it did not.

116. During the discussion of Rule 4.4(a), General Counsel Moushegian focused on the bolded, italicized language in his presentation **"representing a client."** He represented that State prosecutors, including ACA Brander, would not encounter this rule because they are not acting on behalf of clients.

## F.    THE CASE INVOLVES "EXTRAORDINARY CIRCUMSTANCES"

117. This case warrants federal court review because it involves many "extraordinary circumstances." *First*, it is "extraordinary" that the ADO's General Counsel, at the request of the Attorney General's Office, would conduct an ethical training session for State prosecutors, inform State prosecutors that Rule 4.4(a) did not apply to them, and then issue Notice of Charges against ACA Brander (an attendee) based solely on alleged violations of Rule 4.4(a). Based on reported cases, such conduct by the ADO may be unprecedented.

118. *Second*, the ADO's reliance on Rule 4.4(a) is "extraordinary" in this case because it has enabled a criminal defense attorney to manipulate the Attorney Disciplinary System by filing a grievance against a State prosecutor based solely on truthful statements about the criminal defense attorney in response to accusations of prosecutorial misconduct and on the heels of his own misconduct. This defeats the very purpose of Rule 4.4(a), which aims to prevent attorneys from taking actions to embarrass, burden, and delay others while representing a client. That is precisely what Attorney Doe did to ACA Brander by filing the motions and representing that he never received the Videos. This runs contrary to the long-recognized principle of the New Hampshire Supreme that "it is not the policy of the law to visit the penalty for violation of laws upon the innocent, and allow the guilty to escape." *Ossipee Hoisery & Woolen Mfg. Co. v. Canney*, 54 N.H. 295, 324 (1874).

119. *Third*, it is "extraordinary" that the ADO's initiation of disciplinary charges against a State prosecutor has now provided a template for other defense attorneys. Attorney Doe was permitted to wield his title as an officer of the court, and his revoked status as a prosecutor and police officer, to tip the scales of justice in his favor without permitting an opposing attorney to discredit false, misleading, or erroneous statements made in furtherance of a request for monetary sanctions that were all based on Attorney Doe's own file system mismanagement. There is now a distinct likelihood that other State prosecutors will be the subject of grievances filed by defense attorneys given the ADO's interpretation and application of an overbroad professional conduct rule. They too could incur tens of thousands of dollars defending grievances since the State does not indemnify County prosecutors under these circumstances.

120. *Fourth*, it is "extraordinary" that Rule 4.4(a), as currently interpreted and applied by the ADO, prevents State prosecutors from making truthful statements regarding the credibility of a defense attorney, even when the opponent has placed his or her own credibility in issue by making false, misleading, or erroneous statements to the court and by challenging the truthfulness and ethics of a prosecutor. As a result, defense attorneys currently are incentivized to weaponize Rule 4.4(a) by filing grievances with the ADO against a prosecutor who aggressively or forcefully challenges them for engaging in improper conduct during investigations or cases.[15]

121. *Fifth*, there have been "extraordinary" ramifications of the ADO's use of disciplinary proceedings, which have already seriously harmed one State prosecutor and has the potential to cause similar harm to prosecutors statewide.

---

[15] This is explicitly discouraged by the New Hampshire Rules of Professional Conduct, "The purpose of the Rules can be subverted when the Rules are invoked by opposing parties as procedural weapons."

122. The pending ADO's investigation curtailed the manner by which ACA Brander handled her cases as an advocate for the State out of her well-founded concern that the ADO would pursue additional charges against her if she encountered another disgruntled defense attorney.

123. The delay in initiating disciplinary proceedings has caused ACA Brander to personally incur considerable legal fees to defend given the State's position that it does not indemnify County prosecutors for defense costs. ACA Brander also has suffered daily emotional distress since she faces the threat of harm to her career and reputation.

124. The ADO's interpretation and application of Rule 4.4(a) in an unconstitutional manner adversely impacted ACA Brander's ability to perform her prosecutorial duties, which ultimately led her to leave the HCAO and seek employment in a non-prosecutorial capacity for approximately one year.

125. *Sixth*, it is "extraordinary" the ADO would initiate disciplinary charges to punish a prosecutor's courtroom speech that is authorized by the State's rules of evidence, case law, and indeed may be ethically required to satisfy the prosecutor's obligations of zealous representation. In addition, it is "extraordinary" that the ADO would initiate disciplinary charges to deter a prosecutor from fulfilling his or her ethical obligation to report attorney misconduct. It also is "extraordinary" that the ADO would file disciplinary charges against a state prosecutor that would likely result in the chilling of other state prosecutors in making authorized prosecutorial decisions. All of these factors are "extraordinary" because they reflect a separation of powers encroachment by the judicial branch on the executive branch's function in enforcing the state's criminal laws.

126. *Seventh*, the ADO's use of Rule 4.4(a) as a test case against a State prosecutor in this fashion is "extraordinary" as it will likely have the deleterious effect of causing some current State prosecutors to resign and deterring other talented attorneys from joining State County prosecutors' offices, most of which already are understaffed and overburdened with large caseloads.

## LEGAL CLAIMS

### COUNT I

### Violation of First Amendment to the U.S. Constitution

127. The Plaintiff repeats and incorporates by reference the above allegations.

128. At all relevant times, the Defendant acted under the color of state law within the meaning of 42 U.S.C. § 1983, in its administration, implementation, and enforcement of N.H. R. Prof. Conduct 4.4(a).

129. According to the First Amendment to the U.S. Constitution, "Congress shall make no law … abridging the freedom of speech." The First Amendment has been incorporated to apply to the states through the Fourteenth Amendment.

130. ACA Brander's speech at the Disposition Conference of December 6, 2022, is fully protected by the First Amendment.

131. N.H. R. Prof. Conduct 4.4(a) chills such speech and, based on the content and viewpoint of the speech, imposes professional liability in contravention of the First Amendment.

132. Rule 4.4(a) is substantially overbroad in relation to any legitimate application and is facially unconstitutional for that reason.

133. On its face and as applied to ACA Brander's speech, Rule 4.4(a) violates the right to free speech guaranteed by the First Amendment as it is overbroad and has a substantial chilling effect on speech.

### COUNT II

### Violation of Part I, Art. 22 of the New Hampshire (Freedom of Speech)

134. The Plaintiff repeats and incorporates by reference the above allegations.

135. Part I, Article 22 of the New Hampshire Constitution provides: "Free speech and liberty of the press are essential to the security of freedom in a state: They ought, therefore, to be inviolably preserved."

136. ACA Brander's speech at the Disposition Conference of December 6, 2022, is fully protected by the First Amendment and Part I, Article 22 of the New Hampshire Constitution.

137. N.H. R. Prof. Conduct 4.4(a) chills such speech and, based on the content and viewpoint of the speech, imposes professional liability for truthful statements in contravention of the First Amendment.

138. Rule 4.4(a) is substantially overbroad in relation to any legitimate application and is facially unconstitutional for that reason.

139. On its face and as applied to ACA Brander's speech, Rule 4.4(a) violates the right to free speech guaranteed by Part I, Article 22 of the New Hampshire Constitution as it is overbroad and has a substantial chilling effect on speech.

## COUNT III

**Violation of the Due Process Clause, Fourteenth Amendment to the U.S. Constitution**

140. The Plaintiff repeats and incorporates by reference the above allegations.

141. The Fourteenth Amendment provides in relevant part that "… nor shall any State deprive any person of life, liberty, or property, without due process of law."

142. Disciplinary enforcement proceedings deprive the Plaintiff of liberty and property.

143. Due Process requires that people of common intelligence be able to understand what conduct a given rule prohibits.

144. Rules, statutes, or policies that fail to provide fair notice are void for vagueness.

145. Rules, statutes, or policies that authorize and even encourage arbitrary and discriminatory enforcement are void for vagueness.

146. Rules, statutes, or policies that implicate and jeopardize First Amendment rights are required to be especially precise.

147. People of ordinary intelligence cannot understand what Rule 4.4(a) prohibits.

148. The Plaintiff cannot understand what Rule 4.4(a) prohibits.

149. Rule 4.4(a) does not provide fair notice of what it prohibits.

150. Rule 4.4(a) authorizes and encourages arbitrary and discriminatory enforcement.

151. Rule 4.4(a) chills First Amendment protected speech and requires a more stringent review for vagueness.

152. Rule 4.4(a) use of the phrase "if it is obvious that the action that has the primary purpose to embarrass, delay or burden" is unconstitutionally vague.

153. Rule 4.4(a) violates the Due Process Clause of the Fourteenth Amendment and is void for vagueness.

154. The vagueness of Rule 4.4(a) chills protected speech and thereby also violates the First Amendment.

155. On its face and as applied to ACA Brander's speech, Rule 4.4(a) violates the Due Process Clause of the Fourteenth Amendment as it is void for vagueness and overbroad.

## COUNT IV

### Violation of Part I, Art. 15 of the New Hampshire (Due Process)

156. The Plaintiff repeats and incorporates by reference the above allegations.

157. Article I, Part 15 of the New Hampshire Constitution provides, in pertinent part:

> No subject shall be arrested, imprisoned, despoiled, or deprived of his property, immunities, or privileges, put out of the protection of the law, exiled or deprived of his life, liberty, or estate, but by the judgment of his peers, or the law of the land ….

158. Disciplinary enforcement proceedings deprive the Plaintiff of liberty and property.

159. Due Process requires that people of common intelligence be able to understand what conduct a given rule prohibits.

160. Rules, statutes, or policies that fail to provide fair notice are void for vagueness.

161. Rules, statutes, or policies that authorize and even encourage arbitrary and discriminatory enforcement are void for vagueness.

162. Rules, statutes, or policies that implicate and jeopardize First Amendment rights are required to be especially precise.

163. People of ordinary intelligence cannot understand what Rule 4.4(a) prohibits.

164. The Plaintiff cannot understand what Rule 4.4(a) prohibits.

165. Rule 4.4(a) does not provide fair notice of what it prohibits.

166. Rule 4.4(a) authorizes and encourages arbitrary and discriminatory enforcement.

167. Rule 4.4(a) chills First Amendment protected speech and thus requires a more stringent review for vagueness.

168. Rule 4.4(a) use of the phrase "if it is obvious that the action that has the primary purpose to embarrass, delay or burden" is unconstitutionally vague.

169. Rule 4.4(a) violates the Due Process Clause of the Fourteenth Amendment and Part I, Article 15 of the New Hampshire Constitution and is void for vagueness.

170. The vagueness of Rule 4.4(a) chills protected speech and thereby also violates the First Amendment.

171. On its face and as applied to ACA Brander's speech, Rule 4.4(a) violates the Due Process guaranteed by Part I, Article 15 of the New Hampshire Constitution as it is void for vagueness and overbroad.

**COUNT V**

**Violation of Part I, Art. 37 of the New Hampshire Constitution (Separation of Powers)**

172. The Plaintiff repeats and incorporates by refence the above allegations.

173. The New Hampshire Constitution creates a government of three distinct and separate branches:  the legislative, executive, and judicial.  N.H. Const., part I, art. 37.

174. Under the separation of powers doctrine, one branch of the State's government cannot usurp the essential power of another.  An encroachment by one branch on a constitutional function of another branch of government is unconstitutional as it violates the separation of powers.

175. Under Part II, Article 41 of the New Hampshire Constitution, the Governor, the head of the Executive Branch of New Hampshire's government, is responsible for the faithful execution of the laws.  Part II, Article 41 empowers the Governor to take "appropriate court action or proceeding brought in the name of the state" to "enforce compliance with any constitutional or legislative mandate, or restrain violation of any constitutional or legislative power, duty, or right, by any officer, department or agency of the state."

176. Under Part II, Article 42, the Governor has nominated and appointed the New Hampshire Attorney General to serve as the State's top law enforcement officer in the Executive Branch.  The Attorney General is charged with supervising and conducting criminal investigations and prosecutions in the State's superior courts. The Attorney General, aided by Assistant Attorneys General, the State's ten County Attorneys, and Assistant County Attorneys, enforces the criminal laws of the state.

177. The Judicial Branch of New Hampshire's government's issuance of Rule 4.4(a) is unconstitutional because the Rule encroaches on the Executive Branch of government's inherent function of executing and enforcing the criminal laws of the State.

178. The rule suffers federal and state constitutional infirmities because it is overbroad, and is void for vagueness. Aside from these constitutional flaws, the application of this vague and overbroad rule to state prosecutors while performing their duties to enforce the State's criminal laws defeats or materially impairs the inherent functions of the Executive Branch, which is unacceptable under the separation of powers. In addition, application of the rule to state prosecutors for statements that they made in court that were relevant to the case and permissible under applicable rules of evidence and case law collides with and undermines prosecutors' rights to absolute immunity.

179. The ADO incorrectly applied this rule to a Hillsborough County Assistant County Attorney who properly performed her professional duties in a criminal prosecution in her capacity as an Executive Branch state prosecutor. The ADO's actions have had a dramatic, adverse impact on ACA Brander's ability to perform her job and caused her to incur great cost. Simultaneously, their actions threatened the outcome of a serious felony prosecution.

180. Such repeated conduct by Judicial Branch employees to other state prosecutors is an unlawful encroachment on one of the Executive Branch's most important functions.

181. Rule 4.4(a)'s unconstitutional and unchecked reach has expanded the hand of the Judicial Branch to usurp acts essential to the Executive Branch's prosecutorial functioning in the State of New Hampshire in violation of the separation of powers under the New Hampshire Constitution.

182. Rule 4.4(a) is invalid as applied to Plaintiff's exercise of her prosecutorial duties and function at the Disposition Conference of December 6, 2022.

### **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff respectfully requests the following relief:

1.  A declaratory judgment that N.H. R. Prof. Conduct 4.4(a) facially violates the Due Process Clause of the Fourteenth Amendment and First Amendment of the United States

Constitution and the freedom of speech and due process provisions of the New Hampshire Constitution, Part 1, Articles 15 and 22.

2.    A declaratory judgment that N.H. R. Prof. Conduct 4.4(a), as applied to Plaintiff, violates the Due Process Clause of the Fourteenth Amendment and First Amendment of the United States Constitution and the freedom of speech, due process, and separation of powers provisions of the New Hampshire Constitution Part 1, Articles 15,  22, and 37.

3.    A declaratory judgment that the ADO's long-standing application and interpretation of Rule 4.4(a) constitutes an administrative gloss that cannot be set aside without an amendment of the rule by the Supreme Court.

4.    An order directing ADO General Counsel Moushegian to remove Attorney Doe's Grievance against ACA Brander from the docket and to annul the record associated with its receipt and subsequent investigation and docketing.

5.    An award of attorney's fees, costs and expenses in this action.

6.    Any additional relief this Court deems just and proper.

## **JURY DEMAND**

Pursuant to Fed. R. Civ. P. 28, the Plaintiff demands a trial by jury for all issues so triable.

Respectfully submitted,

CLEVELAND, WATERS AND BASS

/s/Jacob M. Rhodes
Bryan Gould (Bar No.8165)
Jacob Rhodes (Bar No.274590)
Two Capital Plaza, 5th Floor
Concord, N.H. 03301
(603) 224-7761
gouldb@cwbpa.com
rhodesj@cwbpa.com

-AND-

CAMPBELL CONROY & O'NEIL, P.C.

Thomas C. Frongillo (BBO No. 180690)
(*Pro Hac Vice Forthcoming*)
20 City Square, Suite 300
Boston, MA 02129-3733
(617) 241-3000
tfrongillo@campbell-trial-lawyers.com

DATE:  July 28, 2025          *Attorneys for Plaintiff Elena Ben David*