**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW HAMPSHIRE**

```
************************************
Elena Ben David ,                    *
                                     *
            Plaintiff,               *
     v.                              *        Civil No. 1:25-cv-00278-LM-AJ
                                     *
Attorney Discipline Office           *
of the NH Supreme Court,             *
                                     *
            Defendants.              *
                                     *
************************************
```

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**

Defendant, the Attorney Discipline Office of the New Hampshire Supreme Court, by and through counsel, the New Hampshire Office of the Attorney General, hereby moves and states as follows:

**BACKGROUND AND PROCEDURAL POSTURE**

In a separate and presently-pending disciplinary proceeding, the ADO is prosecuting Plaintiff Elena Ben David (formerly known as Elena Brander) for alleged violations of N.H. R. Prof. Conduct 4.4(a) (the "Rule"). ECF 1-8. The subject disciplinary charges relate to Plaintiff's conduct during a December 2022 Dispositional Conference in a criminal matter, during which Plaintiff represented the State of New Hampshire in her capacity as an Assistant County Attorney with the Hillsborough County Attorney's Office. ECF 1, ¶¶ 1, 111-112.

Plaintiff now brings suit against the ADO in this federal forum, raising various facial and as-applied challenges to Rule 4.4(a) under the State and Federal constitutions.

Rule 4.4(a) states that, "[i]n representing a client, a lawyer shall not take any action if the lawyer knows or it is obvious that the action has the primary purpose to embarrass, delay or burden a third person."

Plaintiff was charged with violating this rule following a Dispositional Conference in December of 2022. ECF 1, ¶ 51. During the Conference, Plaintiff made reference to two pending motions which were not noticed for that day's court appearance, which motions the Parties then discussed at Plaintiff's request. *See* ECF 1, ¶¶ 51-52.

The pending motions had been filed by "Attorney Doe," and related to his contention that he had not received certain video evidence from Plaintiff in discovery. *See* ECF 1, ¶ 3 (stating that Attorney Doe had "filed two duplicative motions to compel discovery of the Videos and repetitive requests for sanctions.")

While there was some dispute as to when Attorney Doe had received and/or opened the subject discovery, Attorney Doe acknowledged, during the Conference, that he had received same prior to the Conference, and prior to filing his second motion to compel, though he claimed he was not aware that the discovery had been provided when he filed the second motion. ECF 1, ¶¶ 3, 5, 48-49.

Despite Attorney Doe's acknowledgement, Plaintiff remained concerned that her credibility had been "attacked[,]" and she "called on" the court to hear the merits of the pending motions and determine whether the statements in Attorney Doe's second motion to compel were truthful and made in good faith. *See* ECF 1, ¶¶ 6-8, 54; *and see* ECF 1-8, ¶ 40 (noting that Plaintiff "asked to be heard" on the issue of the discovery dispute).

And so, despite the fact that Attorney Doe had already acknowledged that he received the subject discovery, and despite the fact that the matter was not noticed for that (or any)

motion, Plaintiff proceeded to make several statements to "discredit" representations Attorney

Doe made "in his second motion to compel." ECF 1, ¶¶ 7-8.

For example, Plaintiff:

- Stated, "for the record, … [Attorney Doe]'s made an assistant in our office cry in the past"

- "[R]epresented … that [Attorney Doe] had a disciplinary history and was out of compliance in his trust account by $15,000"

- "[A]sked the court if it was aware of the circumstances under which [Attorney Doe] left the Hillsborough County Attorney's Office"[1]

ECF 1, ¶ 112 (citing NOC ¶¶ 79-81).

Plaintiff claims that she made these statements in the scope of her "professional duties in

a criminal prosecution in her capacity as an Executive Branch state prosecutor." ECF 1, ¶ 179.

Attorney Doe filed a grievance with the ADO related to Plaintiff's conduct at the

Dispositional Conference, and the ADO subsequently served Plaintiff with a Notice of Charges

alleging that Plaintiff made the said statements "because she knew, or it was obvious that such

action had the primary purpose to embarrass, delay or burden Attorney Doe, in violation of Rule

4.4(a)[.]" ECF 1, ¶ 113 (internal quotation and citation omitted).

Plaintiff filed an Answer[2] to the ADO's Notice of Charges, raising Due Process, First

Amendment, and Separation of Powers arguments as affirmative defenses. The underlying

disciplinary proceeding is set to go to trial in April of 2026, approximately five months from the

date of this Motion.

---

[1] Before Plaintiff said this, the court had already (1) stated it would deny the pending motions, (2) stated it was "not going to ever rule on" the issue of when the discovery was provided, (3) indicated (multiple times) that they were done discussing the issue, (4) cut the Plaintiff off and told her "no" on two occasions where she interrupted to try and speak further on the issue, and (5) specifically admonished Plaintiff for turning the issue into a "personal vendetta" against Attorney Doe. ECF 1-8, ¶¶ 54, 56, 64, 67-69.

[2] Due to the sensitive nature of the information in the Answer, the ADO has not attached same to this pleading. Should the Court wish to review that document, the ADO may seek to submit same under a protective order.

Plaintiff now seeks to challenge the Rule in this Federal forum, raising constitutional issues similar to (or the same as) those she already put before the ADO in the underlying disciplinary proceeding. Here, Plaintiff seeks declaratory judgments holding that:

(1) N.H. R. Prof. Conduct 4.4(a) is unconstitutional both facially and as applied to Plaintiff because the Rule "violates the Due Process Clause of the Fourteenth Amendment and First Amendment of the United States Constitution and the freedom of speech and due process provisions of the New Hampshire Constitution, Part 1, Articles 15 and 22." ECF 1 at Pages 33-34.

(2) The Rule is unconstitutional as applied to Plaintiff because it violates separation of powers provisions of the New Hampshire Constitution Part 1, Article 37. ECF 1 at P. 34.

(3) The Rule must be amended by the New Hampshire Supreme Court[3] because "the ADO's long-standing application and interpretation of Rule 4.4(a) constitutes an administrative gloss that cannot be set aside" but for such an amendment. ECF 1 at P. 33.

Plaintiff also seeks injunctive relief—specifically, an "order directing ADO General Counsel Moushegian to remove Attorney Doe's Grievance against … [Plaintiff] from the docket and to annul the record associated with its receipt and subsequent investigation and docketing."[4] ECF 1 at P. 34.

Finally, Plaintiff seeks attorney's fees, costs, and expenses associated with this action. ECF 1 at P. 34.

---

[3] The New Hampshire Supreme Court is not a party to this action.
[4] Attorney Doe's Grievance against the Plaintiff is not at issue in this action, and ADO General Counsel Moushegian is not a party to this action.

Notably, while Plaintiff makes frequent reference to her role as an Assistant County Attorney in her Complaint—even referring to her title and office in the "Parties" section of the Complaint and referring to herself as "ACA Brander"[5] throughout—Defendant assumes that Plaintiff brings this action in her personal capacity only. *See* ECF 1, ¶¶ 1, 20 (noting Plaintiff's title and position); *compare id.* at Page 1 (case caption does not identify Plaintiff in her official capacity). Though Plaintiff's claims purport to be steeped in the imprimatur of her office, there is no reason to believe that Plaintiff is authorized to bring this action in her capacity as Assistant County Attorney.

## STANDARD OF REVIEW

Dismissal is appropriate where Plaintiff's claims are not "reasonably susceptible of a construction that would permit recovery" and the facts pled "do not constitute a basis for legal relief." *Beane v. Dana S. Beane & Co.*, 160 N.H. 708, 711 (2010).

In determining if dismissal is appropriate, the Court "test[s] the facts alleged in the pleadings against the applicable law." *Id.* The Court may also consider certain other documents at this stage, such as official public records and documents referred to in the Complaint. *Id.* (internal citations and ellipses omitted). The Court "need not accept allegations in the writ that are merely conclusions of law." *Id.*

## ARGUMENT

### I.    *Younger* Abstention

"[P]rinciples of equity and comity" require federal courts to "abstain from entertaining" suits which seek to enjoin certain state proceedings on the grounds that such proceedings violate

---

[5] Indeed, in the opening paragraph of her Complaint, Plaintiff states that the subject ADO charges are brought against "Assistant Hillsborough County Attorney Elena Ben David." ECF 1, ¶ 1; *compare* ECF 1-8, Page 1 (Notice of Charges against "Elena M. Ben David, Esq.").

federal law, provided the subject state proceeding "affords an adequate opportunity to raise the federal defense and abstention will not cause irreparable harm." *Sirva Relocation, LLC v. Richie*, 794 F.3d 185, 191-92 (1st Cir. 2015) (citing *Younger v. Harris*, 401 U.S. 37, 43-46 (1971)). These same principles "encumber a federal court's ability to order declaratory relief." *Sirva Relocation, LLC v. Richie*, 794 F.3d 185, 192 (1st Cir. 2015) (citing *Samuels v. Mackell*, 401 U.S. 66, 69-70, 72-73 (1971)). "When *Younger* applies, the district court must refrain from reaching the merits of the plaintiff's claims[.]" *Brooks v. N.H. Supreme Court*, 80 F.3d 633, 637 (1st Cir. 1996).

"[T]hree types of state proceedings trigger *Younger* abstention: (i) criminal prosecutions, (ii) civil proceedings that are akin to criminal prosecutions, and (iii) proceedings that implicate a State's interest in enforcing the orders and judgments of its courts." *Sirva Relocation, LLC v. Richie*, 794 F.3d 185, 192 (1st Cir. 2015) (internal quotations omitted, citing *Sprint Communs., Inc. v. Jacobs*, 571 U.S. 69, 73 (2013)). This list of applicable proceedings is commonly referred to as the "*Younger* taxonomy." *Sirva Relocation, LLC*, 794 F.3d at 192.

State administrative attorney disciplinary proceedings are considered "quasi-criminal" proceedings akin to criminal prosecutions, and thus fall within the *Younger* taxonomy. *See Brooks*, 80 F.3d at 637 (applying *Younger* to an attorney disciplinary proceeding); *and see Rio Grande Cmty. Health Ctr., Inc. v. Rullan*, 397 F.3d 56, 69 (1st Cir. 2005) (noting that "*Younger* has been extended to some quasi-criminal … state civil proceedings -- and even administrative proceedings -- brought by the state as enforcement actions against an individual" and collecting cases).

Federal courts also consider (1) "whether there is an ongoing state proceeding that is judicial in nature[,]" (2) "whether the proceeding implicates important state interests[,]" and (3) whether

the proceeding "provides an adequate opportunity to raise federal defenses." *Sirva Relocation, LLC*, 794 F.3d at 196. These factors—commonly referred to as the "*Middlesex* factors"—are "'*additional* factors appropriately considered by [a] federal court before invoking *Younger*." *Id.* at 192 (emphasis in original, quoting *Sprint Communs., Inc. v. Jacobs*, 571 U.S. 69, 80 (2013)).

The *Middlesex* factors are readily met in attorney disciplinary proceedings. In fact, "*Middlesex* itself involved a First Amendment challenge to a state's system of attorney discipline, and the [United States] Supreme Court held that attorney disciplinary proceedings are judicial proceedings for purposes of Younger abstention." *Brooks*, 80 F.3d at 638 (citing *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 433-34 (1982)). The First Circuit reached a similar conclusion in *Brooks v. N.H. Supreme Court*. *Id.*

For example, in *Brooks*, *Younger* abstention barred the plaintiff's efforts to enjoin an ongoing attorney disciplinary proceeding based on a First Amendment freedom of speech claim. *Id. at* 636. There, the court held that the *Middlesex* factors were met because (1) "attorney disciplinary proceedings are judicial proceedings for purposes of *Younger* abstention[,]" (2) such proceedings, which involve "regulating attorney conduct[,]" implicate a "vital" state interest, as "no judicial system can function smoothly unless the attorneys who participate in it are held to high standards of professionalism and accountability[,]" and (3) such proceedings provide an adequate opportunity to raise federal defenses, as the plaintiff was free to raise such defenses in the presently-pending disciplinary proceeding, and any holding to the contrary would "defile the basic presumption that state courts are fully capable of safeguarding federal constitutional rights." *Id. at* 638.

Like the proceeding at issue in *Brooks*, the underlying proceeding here provides an adequate opportunity for Plaintiff to raise federal defenses. Indeed, Plaintiff *already did* raise such

defenses in that proceeding—she referenced the same Due Process, First Amendment, and Separation of Powers claims in her Answer to the ADO's Notice of Charges as affirmative defenses.

In sum, Plaintiff's claims here satisfy the first two steps of the *Younger* abstention analysis—i.e., they fall within the *Younger* taxonomy and satisfy the *Middlesex* factors. Accordingly, for Plaintiff's present claims to avoid *Younger* abstention, she must plead facts sufficient to demonstrate that "any of the isthmian exceptions to the *Younger* doctrine apply." *Sirva Relocation, LLC*, 794 F.3d at 193.

Exceptions to the *Younger* doctrine apply, for example, where (1) "a state proceeding is brought in bad faith … for the purpose of harassment[,]" (2) "the state forum provides inadequate protection of federal rights[,]" and (3) the "state statute is flagrantly and patently violative of express constitutional prohibitions." *Id. at* 192 (internal quotations and citations omitted). Plaintiff bears the burden of demonstrating that such an exception applies to her claims. *See Gates v. Strain*, 885 F.3d 874, 881 (5th Cir. 2018); *Squire v. Coughlan*, 469 F.3d 551, 556 (6th Cir. 2006); *Diamond "D" Const. Corp. v. McGowan*, 282 F.3d 191, 198 (2d Cir. 2002). At the pleading stage, Plaintiff must "make specific factual allegations which support an inference that [a] particular exception applies and . . . cannot rely on general claims of misconduct." *Kennedy v. Town of Billerica*, 594 F. Supp. 2d 117, 124–25 (D. Mass. 2009).

Because Plaintiff fails to plead any facts which would support a finding of such an exception, her claims must be dismissed. "The bad faith exception is narrow and should be granted parsimoniously." *Gates*, 885 F.3d at 881 (citation and quotation marks omitted); *see also Douglas v. N.H. Supreme Court Prof'l Conduct Comm.*, 187 F.3d 621 (Table), 1998 WL 1085773, at *1 (1st Cir. 1998) (approvingly quoting similar language). A prosecution is brought

in bad faith only if there is no "realistic expectation" of obtaining a conviction. *Brooks*, 80 F.3d at 641 (citing *Yonger*, 401 U.S. at 48). Indeed, "[t]here is no case since *Younger* was decided in which the [Supreme] Court has found that the exception for bad faith or harassment was applicable," and "[l]itigants have had almost as little success in the lower courts." 17B Charles Alan Wright & Arthur R. Miller ("Wright & Miller"), *Federal Practice & Procedure* § 4255 (3d ed.). Here, Plaintiff makes no allegation that the subject disciplinary proceedings were brought in bad faith, let alone the type of allegations that could sustain her claims under the bad faith exception.

Nor has Plaintiff demonstrated that the state forum provides inadequate protection of federal rights. As previously discussed, Plaintiff is able to raise her federal defenses in the attorney discipline proceeding, *and has already done so*. If that proceeding is resolved against her, she can appeal any issues to the New Hampshire Supreme Court. Sup. Ct. R. 37(2)(I), (3)(c). "Except in the most extraordinary cases, a federal court must presume that state courts . . . are fully competent to adjudicate federal constitutional and statutory claims properly presented by the parties." *Casa Marie, Inc. v. Superior Court of P.R. for Dist. of Arecibo*, 988 F.2d 252, 262 (1st Cir. 1993) (citations and footnote omitted). Plaintiff has not alleged any facts that, when assumed true, would support the conclusion that this is such an extraordinary case.

Finally, Plaintiff has not met her burden under the third *Younger* exception. This exception is also "exceedingly narrow." *Rossi v. Gemma*, 489 F.3d 26, 34 n. 16 (2007). It applies "when state law is 'flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it." *Sirva Relocation, LLC*, 794 F.3d at 197 (quoting *Younger*, 401 U.S. at 53–54). The Supreme Court "unequivocally held [in *Younger*] that facial invalidity of a statute is not itself an

exceptional circumstance justifying federal interference with a state criminal proceeding."
*Huffman v. Pursue, Ltd.*, 420 U.S. 592, 602 (1975). Indeed, even a *finding* by a lower court that a
statute is unconstitutional is insufficient to justify application of this exception. *See Trainor v.
Hernandez*, 431 U.S. 434, 446–47 (1977). Thus, while the ADO disputes that Plaintiff has
asserted viable constitutional claims at all, the third *Younger* exception would not apply even if
she had. Plaintiff has not asserted any facts that, when taken as true, would place this case within
that exception.

In sum, *Younger* abstention bars all of Plaintiff's claims. For this reason alone, the Court
should dismiss Plaintiff's complaint in its entirety.

## II.    Plaintiff's claims are barred by the Eleventh Amendment or are otherwise not viable.

Even if Plaintiff's claims could survive *Younger* abstention (and they cannot), those claims
are barred by the Eleventh Amendment. "The Supreme Court has clearly said that the Eleventh
Amendment bars federal suits by citizens against the state or state agencies[.]" *Brait Builders
Corp. v. Mass., Div. of Capital Asset Mgmt.*, 644 F.3d 5, 11 (1st Cir. 2011) (internal quotation
and citation omitted). "Absent a waiver [of immunity], neither a State nor its agencies acting
under its control may be subject to suit in federal court." *P.R. Aqueduct & Sewer Auth. v. Metcalf
& Eddy, Inc.*, 506 U.S. 139, 144 (1993) (citation and quotation marks omitted). The ADO was
established by the New Hampshire Supreme Court and is part of the Judicial Branch of the State
of New Hampshire. *See* Sup. Ct. R. 37(1). The Defendant ADO is therefore an arm of the state
for the purposes of the Eleventh Amendment. *See, e.g.*, *Sinapi v. R.I. Bd. Bar Exam'rs*, No. 15-
311-M, 2016 U.S. Dist. LEXIS 51230, at *6 (D.R.I. Apr. 15, 2016) ("The Rhode Island Supreme
Court is an arm of the State of Rhode Island and the Board is an administrative arm of the Rhode
Island Supreme Court.").

To be sure, "[a]n exception to sovereign immunity exists under *Ex parte Young*, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908), when a plaintiff sues a state official in his or her official capacity and seeks only a declaratory judgment or prospective injunctive relief." *Stow v. Comm'r, N.H. Dep't of Corr.*, No. 23-cv-455-SM-TSM, 2025 U.S. Dist. LEXIS 17629, at \*9 (D.N.H. Jan. 6, 2025). But that exception does not apply here, because Plaintiff names only the ADO as a defendant, and not any official. *See O'Neill v. Baker*, 210 F.3d 41, 47 (1st Cir. 2000) ("The Supreme Court has clearly said that the Eleventh Amendment bars federal suits by citizens against the state or state agencies and that this 'jurisdictional bar applies regardless of the nature of the relief sought.'" (quoting *Pennhurst State Sch. & Hosp. v. Holderman*, 465 U.S. 89, 100 (1984)); *White v. Fulton Cty.*, 760 F. App'x 915, 917 (11th Cir. 2019) ("*Ex parte Young* does not apply here . . . because White has named the State of Georgia as a defendant, rather than a state official.").

Relatedly, Plaintiffs' federal claims fail because the ADO is not a "person" within the meaning of 42 U.S.C. § 1983. That statute is the remedial vehicle for federal constitutional violations. *VR Acquisitions, LLC v. Wasatch Cnty.*, 853 F.3d 1142, 1144 n.1 (10th Cir. 2017); 42 U.S.C. § 1983 (providing for "action[s] at law, suit[s] in equity, or other proper proceeding[s] for redress"). Section 1983 provides that "any *person* who deprives an individual of his or her constitutional rights under color of state law shall be liable to that individual." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 60 (1989) (emphasis added). It is well established that "a State is not a person within the meaning of § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64, 66 (1989) (further stating that Section 1983 "does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties."). For this additional reason, the federal claims fail.

Page **11** of **15**

Finally, even if Plaintiff's federal claims were somehow viable, the Eleventh Amendment would still bar her state-law claims in their entirety. It is well established that the Eleventh Amendment bars state-law claims against state agencies or officials named in their official capacity regardless of the relief sought. *Pennhurst State Sch. & Hosp.*, 465 U.S. at 106 ("We conclude that *Young* and *Edelman* are inapplicable in a  suit against state officials on the basis of state law."). Accordingly, the state law claims would still be subject to dismissal even if the federal claims could somehow survive.

### III.     Rules-Based Immunity and Prosecutorial Immunity

Plaintiff's state-law claims are also subject to rules-based immunity and prosecutorial immunity.

Supreme Court Rule 37(7) states that persons "carrying out the tasks and duties of the attorney discipline system shall be immune from civil liability for any conduct arising out of the performance of their duties." Part II, Article 73-a of the New Hampshire Constitution provides that "rules governing the administration of all courts in the state and the practice and procedure to be followed in all such courts … shall have the force and effect of law." Here, Plaintiff does not allege, nor could she, that any of the acts giving rise to her claims did not "aris[e] out of the performance" of the "tasks and duties of the attorney discipline system." Immunity under Rule 37(7) therefore attaches, and her claims are barred.

Prosecutorial immunity also bars Plaintiff's claims. The common law rule of prosecutorial immunity is "well settled, and is premised upon considerations that include concern that harassment by unfounded litigation would cause a deflection of the prosecutor's energies from his public duties and the possibility that he would shade his decisions instead of exercising the independence of judgment required by his public trust." *Belcher v. Paine*, 136 N.H. 137, 145

(1992) (internal quotations and citations omitted). As the Supreme Court has noted, absent immunity, "vexatious litigation could be expected with some frequency, for a defendant often will transform his resentment at being prosecuted into the ascription of improper and malicious actions to the State's advocate." *Belcher v. Paine*, 136 N.H. 137, 145 (1992) (internal quotation omitted, citing *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976)). "[I]t is well settled that prosecutors are absolutely immune from suit for damages arising from 'initiating a prosecution and in presenting the State's case,' provided that the conduct at issue is 'intimately associated with the judicial process.'" *Id.* at 144 (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976)).

The application of absolute prosecutorial immunity "focus[es] on the act, not the actor" and extends beyond criminal "prosecutors" to public agencies or employees acting in a prosecutorial role. *Id.* at 144-45 (internal quotations and citations omitted). When the complained of acts are "intimately related to initiating and pursuing judicial proceedings so as to be called an advocacy function, absolute immunity attaches." *Id.* at 146.

Prosecutorial immunity extends to Plaintiff's claims here. Supreme Court Rule 36(6)(f) specifically provides that "[d]isciplinary counsel shall perform prosecutorial functions[.]" And though the New Hampshire Supreme Court has not specifically addressed whether prosecutorial immunity extends to attorney discipline cases, other courts have concluded that it does. *See, e.g., Stein v. Disciplinary Bd.*, 520 F.3d 1183, 1193 (10th Cir. 2008); *Kimner v. South Carolina*, No. 3:21-3776-CMC-SVH, 2022 U.S. Dist. LEXIS 27953, at *6–7 (D.S.C. Jan. 24, 2022) (collecting cases); *Carey v. Me. Bd. of Overseers of the Bar*, 2017 Me. Super. LEXIS 269, *35 (Kennebec Cnty. Super. Ct. Oct. 25, 2017).

The primary purpose of prosecutorial immunity" is to "protect the proper functioning of the office, rather than the individual prosecutor." *Hoffman v. Office of the State Atty.*, 793 F. App'x 945, 954 (11th Cir. 2019) (cleaned up). Accordingly, courts have extended prosecutorial immunity vicariously to a prosecutor's employer when the employer is sued under a respondeat superior theory for the prosecutor's alleged conduct. *See, e.g., Rahrer v. Bd. of Psychologists*, DOC, 298 Mont. 28, 31 (2000) (recognizing that prosecutorial immunity "cover[s] not only the personal liability of prosecutors, but also the vicarious liability of the State and the Department of Justice"); *S.J.S. by L.S. v. Faribault Cnty.*, 556 N.W.2d 563, 566 (Minn. Ct. App. 1996) ("The policy considerations that support extending absolute immunity to prosecutors also support extending absolute immunity vicariously to the county."). This extension of prosecutorial immunity finds firm footing in the New Hampshire's Supreme Court's jurisprudence recognizing vicarious official immunity. *See Farrelly v. City of Concord*, 168 N.H. 430, 440 (2015) ("Vicarious immunity ought to apply when the very policies underlying the grant of official immunity to an individual public official would otherwise be effectively undermined.") (citation and quotation marks omitted).

Where the ADO acted within its advocacy function in enforcing the Rules of Professional Conduct against the Plaintiff, absolute prosecutorial immunity bars each of Plaintiff's claims. *See Forrester v. White*, 484 U.S. 219, 228 (1988) (holding that it is "the nature of the function performed, not the identity of the actor who perform[s] it, that inform[s] … [the court's] immunity analysis."). Plaintiff's claims must therefore be dismissed.

Respectfully submitted,

Attorney Discipline Office of the
New Hampshire Supreme Court

By its attorney,

THE OFFICE OF THE ATTORNEY GENERAL

Dated: November 19, 2025      /s/ Shawna Bentley
Shawna Bentley, Bar #270149
Assistant Attorney General
Civil Bureau
NH Department of Justice
1 Granite Place South
Concord, NH 03301
Shawna.bentley@doj.nh.gov
(603) 271-3658

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was sent, this day, to all parties and/or counsel of record via the Court's electronic filing system.

/s/ Shawna Bentley
Shawna Bentley