**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW HAMPSHIRE**

| |
|---|
| ELENA BEN DAVID, <br>                              Plaintiff, <br> v. <br> BRIAN R. MOUSHEGIAN, *et al.*, <br>                              Defendants. |

CIVIL ACTION NO.: 1:25-CV-00278-SE-AJ

**PLAINTIFF'S OBJECTION TO DEFENDANTS' MOTION TO DISMISS**

**I.      INTRODUCTION**

This action challenges Defendants' use of New Hampshire Rule of Professional Conduct 4.4(a) to prosecute Elena Ben David, an Assistant County Attorney in the Hillsborough County Attorney's Office ("HCAO"), for engaging in truthful courtroom advocacy made in her capacity as a state prosecutor. Rule 4.4(a), both facially and as applied here, violates the First Amendment and the Due Process Clause of the Fourteenth Amendment because it authorizes professional discipline under an indeterminate "primary purpose" standard that gives no fair notice, lacks objective limits, and invites arbitrary enforcement against protected speech.

The Attorney Discipline Office of the New Hampshire Supreme Court ("ADO") filed a Notice of Charges against Plaintiff based solely on three statements she made during a Superior Court hearing. Plaintiff made those statements in direct response to defense counsel's repeated false accusations that she had withheld discovery and had committed conduct warranting sanctions. The challenged statements were truthful, responsive to issues before the court, and directed to opposing counsel's credibility, competence, and asserted good faith.

The underlying discovery dispute concerned the State's production of police body-worn camera video evidence consisting of three video files and a table of contents (the "BWC Video Evidence"). Court-

appointed defense counsel ("Attorney Doe") claimed that Plaintiff had failed to timely produce that evidence. In three days, he filed two motions to compel and sought monetary sanctions against Plaintiff personally.

Before filing either motion, Attorney Doe had received the BWC Video Evidence, downloaded it to his computer, and reviewed it with his client. He later requested the State to produce another discovery link. The State provided a second courtesy link within one business day. Thus, before Attorney Doe filed the motions accusing Plaintiff of discovery misconduct, the State had timely produced the same evidence to him *twice*.

At the hearing, the central factual issue became whether Attorney Doe had truthfully represented when he received the BWC Video Evidence. Attorney Doe offered no documentary proof supporting his claim of non-receipt and relied instead on his own account. Plaintiff, by contrast, relied on documentary evidence from the Hillsboro Police Department ("HPD") showing when discovery links were sent and downloaded, as well as her own firsthand knowledge of the State's productions.

By filing the motions and pursuing sanctions against Plaintiff personally, Attorney Doe placed his credibility, professional competence, and good faith directly at issue. The Superior Court was required to assess whether Attorney Doe had accurately described the discovery history and whether he had any legitimate basis to accuse Plaintiff of withholding evidence and to seek sanctions against her.

Attorney Doe also attacked Plaintiff personally and professionally. In his second motion, he labeled her a "passive-aggressive obstructionist." At the hearing, he accused her of "juvenile sniping" and continued to suggest that her request that discovery communications be directed to her, rather than staff or the police, was improper obstruction. In response, Plaintiff explained that she had a legitimate reason for that request: Attorney Doe had previously reduced an HCAO assistant to tears.

Attorney Doe then attempted to bolster his credibility by invoking his prior service as a police officer and prosecutor. Plaintiff responded by asking whether the Superior Court was aware of the circumstances

under which Attorney Doe left the HCAO. Plaintiff did not elaborate. At the time, publicly available information described Attorney Doe's resignation as part of an agreement that he would never again serve as a prosecutor or police officer in New Hampshire.

Plaintiff also addressed Attorney Doe's evasive responses to the Superior Court's questions about whether and when he received the BWC Video Evidence. Plaintiff explained that Attorney Doe had a history of mismanagement, including client trust-account mismanagement, which bore directly on whether his asserted inability to locate the evidence resulted from his own disorganization.

The ADO does not allege that Plaintiff lied, disclosed confidential information, disrupted the tribunal, or prejudiced the administration of justice. The Superior Court denied Attorney Doe's motions to compel and requests for sanctions, and the judge did not refer Plaintiff to the ADO. Instead, the ADO's theory is that Plaintiff's truthful, responsive statements violated Rule 4.4(a) because they had a "primary purpose" to embarrass Attorney Doe.

This case exposes the constitutional defect in Rule 4.4(a). The rule permits discipline based on a retrospective and subjective assessment of whether an attorney's "primary purpose" was to embarrass, delay, or burden another person, even where the attorney's speech served substantial and legitimate advocacy purposes. As applied here, Rule 4.4(a) draws no meaningful line between protected courtroom advocacy and sanctionable misconduct, and it chills attorneys—particularly prosecutors—from defending their integrity, their clients, and the accuracy of the record.

## II.    BACKGROUND

### A.    The Underlying Sanctions Motions Lacked Merit

This action arises from disciplinary charges based on three statements Plaintiff made while serving as the State's prosecutor at a December 6, 2022 dispositional conference in an arson prosecution. The

statements were made only after Attorney Doe filed two motions to compel and for sanctions alleging that Plaintiff had failed to provide the BWC Video Evidence in discovery. AC ¶¶ 2–5, 41, 46–48, 171–72.

The Amended Complaint alleges that the premise of those sanctions motions was false. HPD first sent the BWC Video Evidence to Attorney Doe on September 29, 2022. The AXON audit log recorded that Attorney Doe received the e-mail that evening and downloaded the evidence the next morning. AC ¶¶ 28–29. On October 12, 2022, Attorney Doe told Plaintiff in writing that he had watched portions of the body cameras with his client. AC ¶ 30.

After plea negotiations failed, Attorney Doe requested a new AXON link because the prior link had expired. AC ¶¶ 31–32. Plaintiff promptly agreed to provide another link, and on November 28, 2022, her assistant asked HPD to resend it. HPD sent the second courtesy link that evening; the AXON audit log recorded that Attorney Doe received it at 9:19 p.m. AC ¶¶ 34–39.

Attorney Doe nevertheless accused Plaintiff of failing to provide the link and threatened to file an "appropriate pleading." AC ¶ 40. On November 30, 2022, he filed the first motion to compel and for sanctions, alleging that Plaintiff had deprived the defendant of discovery and should be sanctioned for prosecutorial misconduct. AC ¶ 41.

Plaintiff promptly filed an objection attaching HPD's production chronology. AC ¶ 42. Attorney Doe accessed that objection on December 1, 2022, at 6:54 a.m. AC ¶ 43. The next day, Attorney Doe filed a second sanctions motion. AC ¶¶ 46–48. In that motion, he accused Plaintiff of a "passive-aggressive obstructionist approach" and asserted that her alleged "non-feasance" justified monetary sanctions. AC ¶ 48.

### B.     The Hearing Turned on Credibility

At the December 6 hearing, the Superior Court had not previously reviewed the motions. AC ¶ 54. The court questioned Attorney Doe about the production chronology and whether he had received the link.

Attorney Doe repeatedly avoided a direct answer before finally acknowledging: "I have it, sir. I have it. I have it." AC ¶¶ 56–60.

Attorney Doe's sanctions motions placed his own credibility, competence, and candor at issue. He had accused Plaintiff of constitutional discovery violations and prosecutorial misconduct, requested a show-cause hearing, and sought monetary sanctions. AC ¶¶ 62–64. Had those accusations been true, the Superior Court could have sanctioned Plaintiff personally, sanctioned the State, cited her for contempt, dismissed the prosecution, or referred her to the ADO. AC ¶ 64. Plaintiff therefore had both a prosecutorial obligation and a due process interest in responding to the allegations. AC ¶ 65.

Plaintiff's challenged statements were made in that context. First, in response to Attorney Doe's claim that Plaintiff had created a "ridiculous process" by insisting that discovery requests be sent to her rather than to her assistant or police, Plaintiff explained that Attorney Doe previously had made an assistant in the office cry. AC ¶¶ 70–78. Second, in response to Attorney Doe's insistence that he had not timely received the second link, Plaintiff referenced his then-public reprimand for trust-account noncompliance as bearing on his ability to manage, preserve, and locate case materials. AC ¶¶ 81–90. Third, when Attorney Doe invoked his military service and prior roles as a police officer and prosecutor to bolster his integrity, Plaintiff asked whether the Superior Court was aware of the circumstances under which he left the Hillsborough County Attorney's Office and offered nothing more. AC ¶¶ 92–102.

Plaintiff did not elaborate on the circumstances of Attorney Doe's departure, did not supply details about the public reprimand, and only briefly referenced the facts she believed bore on credibility, competence, and the explanation for the missing discovery. AC ¶¶ 90, 99–102. The information involved matters reflected in  publicly available documents. AC ¶¶ 90, 100. The Notice of Charges does not allege that Plaintiff lied, disclosed confidential information, violated a court order, or disrupted the tribunal. AC ¶¶ 171–72.

The Superior Court denied the sanctions motions. As to the first motion, the court found it was "not persuaded that any delay by the State in producing the link would warrant the imposition of sanctions." AC ¶¶ 103, 110 n.16. As to the second, the court denied it as moot in light of Attorney Doe's receipt of the requested information. AC ¶ 110 n.16. Attorney Doe later withdrew both motions. AC ¶ 110.

### C.     The Failed Sanctions Motions Became the ADO Charge

Two days after the hearing, Attorney Doe admitted that he had located the second AXON link in his e-mail trash and "must have inadvertently deleted" it. AC ¶ 107. In the same e-mail, he asked Plaintiff's supervisor to conduct an internal review of Plaintiff. AC ¶ 108. On December 11, 2022, Attorney Doe acknowledged to the Superior Court that he had downloaded and watched the BWC Video Evidence at the outset of the case and had received the second link before filing the sanctions motions. AC ¶ 110. The next day, he filed a grievance with the ADO. AC ¶ 111.

Attorney Doe's grievance alleged a violation of Rule 8.4(g), not Rule 4.4(a). AC ¶¶ 131, 167. Plaintiff filed a reply and cross-grievance alleging that Attorney Doe's motions were frivolous, false, and sanction-driven. AC ¶¶ 135–38. The ADO docketed Attorney Doe's grievance against Plaintiff but did not act on Plaintiff's cross-grievance for nearly two years. AC ¶¶ 141, 144, 156.

On March 27, 2025, the ADO issued a Notice of Charges against Plaintiff under Rule 4.4(a), not Rule 8.4(g). AC ¶¶ 171–73. The Notice alleged that Plaintiff's three statements had the "primary purpose" to embarrass, delay, or burden Attorney Doe. *Id.* The charges were filed more than two years after the underlying hearing and after the ADO failed to preserve or obtain the November 28, 2022 e-mail at the center of the discovery dispute, which, despite a preservation request, was apparently permanently deleted by Attorney Doe. AC ¶¶ 159–66, 171–74; *see also* ECF No. 1-7, p. 52 (Attorney Doe concedes that the November 28, 2022 e-mail "link" he deleted was the "gravamen of [his] motions"). The charges were also filed after Plaintiff communicated an express assertion of her constitutional rights. AC ¶ 143.

6

### D.    The Disciplinary Proceeding Has Been Stayed

The ADO stayed its action pending resolution of this case. ECF No. 21. That posture is material. Plaintiff does not ask this Court to interrupt a state hearing moving toward adjudication. She seeks prospective declaratory and injunctive relief before the disciplinary system applies an unconstitutional speech standard to truthful courtroom advocacy made in response to accusations of prosecutorial misconduct. AC Prayer for Relief ¶¶ 1–5.

### III.    DEFENDANTS RELY SOLELY ON AVOIDANCE DOCTRINES

Defendants' motion is notable for what it does not argue. Defendants do not meaningfully challenge the substantive sufficiency of Plaintiff's constitutional claims.  They do not argue that Rule 4.4(a)'s "primary purpose" standard gives constitutionally adequate notice.  They do not argue that the Rule supplies objective limits sufficient to prevent arbitrary enforcement.  They do not argue that truthful courtroom advocacy, made in response to sanctions motions and accusations of prosecutorial misconduct, falls outside the protection of the First Amendment. Nor do they argue that the Verified Amended Complaint fails to plead concrete facts supporting Plaintiff's as-applied First Amendment, facial overbreadth, void-for-vagueness, or procedural due process claims.

Instead, Defendants seek dismissal solely through avoidance doctrines. Their motion depends on *Younger* abstention, 11th Amendment immunity, state-rule immunity, and prosecutorial immunity. Those arguments do not test the constitutional validity of Rule 4.4(a) or the plausibility of Plaintiff's allegations. They *only* ask the Court to decline to decide those issues or to hold that Defendants are immune from suit.

### IV.    STANDARD OF REVIEW

Defendants have set forth New Hampshire's state-law motion to dismiss standard rather than the applicable federal standard. See Defs.' Mem. at 5. This action is pending in federal court and asserts federal constitutional claims. The motion is therefore governed by the Federal Rules of Civil Procedure and federal

7

standards governing jurisdiction, pleading sufficiency, abstention, and sovereign immunity. See Fed. R. Civ. P. 12(b)(6), 12(d).

### A.     Applicability of Rule 12(b)(1)

*Younger* abstention and Eleventh Amendment sovereign immunity are questions of subject matter jurisdiction under the Rule 12(b)(1) standard. *Jafri v. N.H. Sup.Ct. Cmte. On Character and Fitness,* 2022 WL 10600019, *1, n. 1 (recognizing that courts are split as to whether Rule 12(b)(1) or 12(b)(6) provide the proper procedural hook). Where, as here, the motion is directed principally to the pleadings and seeks dismissal at the threshold, the Court must accept the Complaint's well-pleaded factual allegations as true and draw all reasonable inferences in Plaintiff's favor. *See Torres-Negrón v. J & N Records, LLC*, 504 F.3d 151, 162–63 (1st Cir. 2007); *Valentin v. Hosp. Bella Vista*, 254 F.3d 358, 363 (1st Cir. 2001). A facial jurisdictional attack does not permit the Court to resolve disputed factual issues, weigh competing accounts, or reject plausible allegations concerning the nature of the challenged disciplinary proceedings.

Although a factual Rule 12(b)(1) challenge may permit consideration of limited jurisdictional evidence, that procedure does not authorize Defendants to litigate the merits under the guise of jurisdiction. Where jurisdictional facts are intertwined with the merits, the Court should proceed cautiously and should not decide disputed merits issues at the pleading stage. Plaintiff needs only to plead facts that, taken as true, establish a basis for federal jurisdiction. She has done so by alleging federal constitutional claims arising under the First and Fourteenth Amendments and by seeking declaratory and prospective injunctive relief against state officials charged with enforcing the challenged rule. *See* 28 U.S.C. § 1331.

### B.     Applicability of Rule 12(b)(6)

Rule 12(b)(6) is the proper vehicle for review of Defendants' claim of state prosecutorial immunity. That rule tests the legal sufficiency of the complaint, not the ultimate truth of the allegations or the merits of the claims. To survive dismissal, a complaint must contain sufficient factual matter, accepted as true, to state

a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In applying that standard, the Court must accept all well-pleaded facts as true, draw all reasonable inferences in Plaintiff's favor, and disregard only bare legal conclusions. *See Ocasio-Hernández v. Fortuño-Burset,* 640 F.3d 1, 7, 12 (1st Cir. 2011).

This standard is particularly important here because Defendants' motion repeatedly asks the Court to credit Defendants' characterization of the disciplinary record, the Superior Court hearing, the purpose of Plaintiff's statements, and the adequacy of the disciplinary forum. Those are not Rule 12(b)(6) determinations. The Court may not decide intent, credibility, motive, selective enforcement, bad faith, chilling effect, or the constitutional adequacy of the state process by accepting Defendants' competing factual account. At this stage, Plaintiff's factual allegations in her verified amended complaint control.

## V.      ARGUMENT

### A.      *Younger* Abstention Is Unwarranted

*Younger* abstention is not an ordinary merits defense. It is a narrow exception to the federal courts' "virtually unflagging obligation" to exercise jurisdiction. *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013); *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 359 (1989)("*NOPSI*"). The Supreme Court has confined *Younger* to three exceptional categories: (1) ongoing state criminal prosecutions; (2) certain civil enforcement proceedings akin to criminal prosecutions; and (3) civil proceedings that implicate a state court's ability to perform its judicial functions. *Sprint*, 571 U.S. at 78–79.

The *Middlesex* factors do not expand *Younger* beyond those categories. After *Sprint*, they are not a free-floating abstention test. Rather, they are considered only after a proceeding falls within one of *Younger's* limited classes. *Id.* at 81. Even then, abstention remains inappropriate if the state forum is inadequate, the proceeding is brought or maintained in bad faith or for harassment, or extraordinary circumstances exist. *See Younger v. Harris*, 401 U.S. 37, 53–54 (1971); *Middlesex*, 457 U.S. at 435.

At the pleading stage, the Court must evaluate *Younger* abstention on the facts alleged and the procedural posture presented. Plaintiff alleges in the verified amended complaint, among other things, that (1) the disciplinary proceeding has been stayed pending this federal action; (2) she lacks a timely and adequate state forum for adjudicating her federal constitutional claims; (3) the challenged rule chills protected advocacy; and (4) the disciplinary proceeding reflects selective and retaliatory enforcement. Those sworn allegations must be credited for purposes of Defendants' motion, particularly where Defendants have submitted no sworn evidence opposing them.

  1. *Middlesex* and *Brooks* Do Not Create a Categorical Rule Requiring Abstention.

Defendants treat *Middlesex* and *Brooks v. New Hampshire Supreme Court*, 80 F.3d 633 (1st Cir. 1996), as establishing a categorical rule requiring abstention whenever a complaint filed in federal court involves a challenge to a state attorney-discipline proceeding. They do not. *Middlesex* held abstention appropriate where an attorney had failed even to attempt to present his constitutional objections in a disciplinary system capable of considering them, and where an adequate state forum had "clearly been demonstrated" because state supreme court review was available for any public discipline. 457 U.S. at 435–37. *Brooks* likewise involved a materially different posture: the constitutional issue forming the centerpiece of the federal complaint had already been "raised, briefed, and teetering on the brink of decision" before the New Hampshire Supreme Court. 80 F.3d at 639.

This case is materially different. Here, Plaintiff sought review from the New Hampshire Supreme Court. That court declined to exercise original jurisdiction. AC ¶ 217. The ADO, Hearings Committee, and PCC are creatures of the New Hampshire Supreme Court's attorney-discipline system. They cannot declare unconstitutional a Rule of Professional Conduct promulgated by that same Supreme Court. AC ¶¶ 15, 217–18. Nor do the disciplinary rules ensure that any judicial officer will ever adjudicate Plaintiff's facial constitutional claims. *Id.*; *see* Sup. Ct. R. 40(3)(c)(6).

While *Middlesex* and *Brooks* supply the analytical framework for this Court's determination of the motion, the outcomes in those cases do not mandate dismissal of the amended complaint. The cases confirm only that attorney-discipline proceedings may, in appropriate circumstances, implicate important state interests. They do not hold, as argued by Defendants, that abstention is required where the respondent lacks a timely state forum capable of adjudicating a facial constitutional challenge to the rule, where the state Supreme Court has declined original review, and where the underlying disciplinary proceeding has been stayed in favor of this federal action.

### 2.   *The Stayed Proceedings and the Absence of a State Forum Defeat Abstention.*

Federal adjudication would not interfere with an active state proceeding. The disciplinary proceeding has already been stayed pending this federal action. That stay matters. *Younger* exists to prevent federal courts from disrupting ongoing state adjudications moving toward judgment. Here, the disciplinary system itself has paused the matter while this Court addresses the antecedent federal constitutional questions.

Federal adjudication would thus not interrupt an evidentiary hearing, countermand a state judgment, supervise the day-to-day conduct of a state tribunal, or review the correctness of any disciplinary ruling. There is no disciplinary judgment. There is no state-court judgment. There is no state adjudication "teetering on the brink of decision." *Brooks*.   80 F.3d at 639. Rather, this action asks whether the State may constitutionally enforce Rule 4.4(a) against Plaintiff at all. *NOPSI* makes clear that "there is no doctrine that the availability or even the pendency of state judicial proceedings excludes the federal courts." 491 U.S. at 373.

The state process is also not timely or adequate for *Younger* purposes. Defendants argue that Plaintiff may raise constitutional issues as "affirmative defenses" in the disciplinary proceeding and later seek review if discipline is imposed. That is insufficient. The question is not whether Plaintiff may raise constitutional objections at some point in the state process. The question is whether the state process affords a meaningful

11

and timely opportunity to obtain adjudication of the federal claims. See *Gibson v. Berryhill*, 411 U.S. 564, 577–79 (1973); *Middlesex*, 457 U.S. at 435.

It does not. For years, Plaintiff had no mechanism to compel discovery, no ability to move to dismiss, and no judicial forum in which to challenge the constitutionality of Rule 4.4(a). AC ¶¶ 182, 217–18 & n.20. Plaintiff further alleges that Supreme Court review is not guaranteed for all disciplinary outcomes and that the disciplinary process can proceed without any judicial officer ever resolving the facial constitutional issue. AC ¶¶ 15, 22, 217–18. That posture materially differs from *Middlesex,* where an adequate state forum had been clearly demonstrated, and from *Brooks*, where the very issue was already before the New Hampshire Supreme Court.

The stay underscores the point. The disciplinary process is not presently advancing toward the resolution of Plaintiff's constitutional claims. It has stopped because this federal action will determine whether the governing rule may be enforced against Plaintiff at all. Requiring Plaintiff to return to a stayed disciplinary process before obtaining a federal adjudication would not serve the purposes of comity. It would simply postpone review while the First Amendment injury continues.

### 3. The First Amendment Reinforces the Need for Federal Adjudication.

Abstention principles must be applied with caution where First Amendment claims are at issue. The Supreme Court has been "particularly reluctant to abstain in cases involving facial challenges based on the First Amendment" and has held that "abstention is inappropriate for cases where statutes are justifiably attached on their face as abridging free expression." *City of Houston v. Hill*, 482 U.S. 451, 467 (1987) (cleaned up) (declining to abstain under *Railroad Comm'n v. Pullman Co.,* 312 U.S. 496 (1941)). Where a challenged enactment is not obviously susceptible to a limiting construction, "it is the duty of the federal court to exercise its properly invoked jurisdiction." *Hill* at 468.

12

This case presents both facial and as-applied First Amendment challenges to a professional-speech rule. The loss of First Amendment freedoms, even for minimal periods of time, is an irreparable injury. *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (finding impairment of First Amendment interests to be irreparable injury for preliminary injunction analysis). That injury is magnified here because the challenged rule applies to courtroom advocacy in real time, where lawyers must challenge credibility, expose inaccuracies, and defend against misconduct allegations without knowing whether disciplinary authorities will later decide that embarrassment was their "primary purpose." *Younger* does not require federal courts to stand on the sideline while advocacy protected by the First Amendment is chilled under a vague and overbroad disciplinary rule.

Nor is Plaintiff asserting only a generalized or speculative chill, which sometimes arises in First Amendment litigation. Plaintiff is the respondent in an actual disciplinary prosecution under the very rule she challenges. The charge is based on truthful courtroom advocacy made while Plaintiff was defending herself and the State against accusations of prosecutorial misconduct. AC ¶¶ 171–73. Plaintiff alleges that the disciplinary proceeding has sharply curtailed and adversely affected her professional speech. AC ¶¶ 210–15. At this stage, those verified allegations must be accepted as true. For purposes of this motion, there can be no question that the chill on the Plaintiff's exercise of her rights is real.

    4. *Separate and Independent of the Adequate-Forum Problem, the Amended Complaint Plausibly Alleges Bad Faith, Retaliation, Selective Enforcement, and Extraordinary Circumstances.*

Even if this disciplinary prosecution otherwise fell within *Younger'*s limited domain, abstention would remain improper because the Amended Complaint plausibly alleges bad faith, retaliation, selective enforcement, and an inadequate state forum for the timely protection of Plaintiff's federal rights. *See Younger*, 401 at 53–54; *Sirva Relocation, LLC v. Richie*, 794 F.3d 185, 192–93 (1st Cir. 2015). *Younger*'s exceptions are narrow, but they are not illusory. A federal court need not abstain where a state proceeding is brought or maintained in bad faith or for harassment, or where the state forum provides inadequate protection of federal

13

rights. *Sirva*, 794 F.3d at 192–93; *Gibson*, 411 U.S. at 578–79. And where bad faith is shown, irreparable injury is established for *Younger* purposes because a party has a federal right to be free from bad-faith prosecution. *Shaw v. Garrison*, 467 F.2d 113, 120, 122 (5th Cir. 1972); *Netflix, Incorporated v. Babin,* 88 F.4th 1080, 1085 (5th Cir. 2023).

Plaintiff does not contend that every *Brady* or *Giglio* violation automatically establishes bad faith under *Younger*. That would overstate the doctrine. *Brady* itself holds that suppression of material favorable evidence violates due process "irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). *Giglio* likewise imposes disclosure obligations with respect to material impeachment evidence bearing on the reliability of a government witness. *Giglio v. United States*, 405 U.S. 150, 154–55 (1972). The point here is narrower and stronger: a prosecuting authority's knowing or willfully blind refusal to obtain, preserve, or account for material credibility and impeachment evidence—especially evidence bearing on the complaining witness on whom the prosecution depends—supports an inference of bad faith when the state process affords no timely corrective mechanism.

Federal courts have long recognized that prosecutors may not discharge their constitutional disclosure obligations through deliberate compartmentalization or willful blindness. In this Circuit, a prosecutor cannot avoid disclosure duties by failing to make a reasonable inquiry of those within the government who possess relevant impeachment information. *United States v. Osorio*, 929 F.2d 753, 761–62 (1st Cir. 1991). *United States v. Bender* confirms the limiting principle: *Brady* does not impose a roving duty to seek out information wholly outside the government's possession or control, but it does require disclosure of material known to the prosecution team and those acting on the government's behalf. 304 F.3d 161, 164 (1st Cir. 2002). *United States v. Andrews* has the same effect in the *Giglio* context: prosecutors may not avoid impeachment evidence by claiming ignorance where they worked closely with the officials holding the information and had access to the evidence through reasonable inquiry. *United States v. Andrews,* 824 F. Supp. 1273, 1288–90 (N.D. Ill.

14

1993). *Andrews* also ties the constitutional obligation to prosecutors' professional obligations, including the ethical principle that a prosecutor should not avoid pursuing information because it may damage the prosecution or aid the accused. *Id.* at 1289–90. A prosecutor "may not bury his head in the sand and refuse to inquire of a witness facts that may lead to impeachment evidence." *Freeman v. United States,* 284 F. Supp. 2d 217, 227 (D. Mass. 2003). This remains true even when the evidence is in the hands of a government witness rather than a member of the prosecution team. *United States v. Stellato,* 74 M.J. 473, 487 (C.A.A.F. 2015).

Those principles apply with particular force here. The ADO is not a neutral bystander. It is the prosecuting authority in the disciplinary matter. The Amended Complaint alleges that the ADO proceeded against Plaintiff while ignoring or failing to obtain evidence central to the only factual dispute that gave rise to the charge: whether Attorney Doe had received, downloaded, misplaced, deleted, or failed to preserve the BWC Video Evidence and the November 28, 2022 HPD/AXON e-mail transmitting the second courtesy link. AC ¶¶ 159–66. That e-mail was not collateral. It went directly to Attorney Doe's credibility, his grievance, Plaintiff's cross-grievance, the legitimacy of his sanctions motions, and the context in which Plaintiff made the statements later charged as misconduct. The Amended Complaint further alleges that the ADO should have understood the e-mail's significance, yet did not obtain it, apparently never possessed it, and later learned that Attorney Doe no longer had it. AC ¶¶ 161–63. The ADO then opposed forensic inquiry into the very devices that could determine whether the e-mail, BWC Video Evidence, or related metadata had been deleted, when they were deleted, and what search efforts Attorney Doe actually performed. AC ¶¶ 164–66. A prosecutor's office cannot circumvent *Brady* by "keeping itself in ignorance." *United States v. Young*, 20 F.3d 758, 764 (7th Cir. 1994).

That alleged conduct supports bad faith for *Younger* purposes. A disciplinary prosecutor cannot rely on Attorney Doe as the complaining witness while refusing to investigate the very evidence that determines

15

whether his accusations against Plaintiff were truthful, reckless, or false. Nor can the ADO treat Plaintiff's responsive courtroom advocacy as gratuitous embarrassment while disregarding evidence that Attorney Doe created a false discovery dispute, sought sanctions based on material omissions, failed to correct the record, and then failed to preserve evidence bearing on his own credibility. At the pleading stage, these allegations support more than disagreement with charging discretion. They support the inference that the ADO maintained a prosecution while deliberately avoiding facts that would undermine its theory of the case.

The bad-faith inference is reinforced by the ADO's shifting theories and inconsistent statements. Attorney Doe's grievance alleged Rule 8.4(g), not Rule 4.4(a). AC ¶¶ 167–68. Disciplinary Counsel later told Plaintiff that Rule 8.4(g) did not govern and that, "if anything," Rule 4.4(a) did. AC ¶ 169. Rule 8.4(g), unlike Rule 4.4(a), expressly protects constitutionally protected speech. AC ¶ 170. Then, after more than two years, the ADO issued a Notice of Charges under Rule 4.4(a), added a third theory that had not been included in the docketed grievance, and alleged that Plaintiff's three statements had the "primary purpose" to embarrass, delay, or burden Attorney Doe. AC ¶¶ 171–74. The ADO did so despite its own General Counsel's alleged statewide advice to prosecutors that Rule 4.4(a) was "not something that you would encounter as a prosecutor" because prosecutors are not acting "in representing a client" within the meaning of the Rule. AC ¶¶ 178–81. A prosecuting authority's decision to charge a prosecutor under a rule it allegedly told prosecutors they would not encounter is powerful evidence of arbitrary, selective, and retaliatory enforcement.

The Notice itself further supports that inference. The Amended Complaint alleges that the Notice cherry-picked three statements, ignored the context in which they were made, adopted Attorney Doe's position that his misconduct was irrelevant, omitted his attacks on Plaintiff, omitted his material misrepresentations and failures to correct the record, and falsely framed the hearing as a genuine discovery dispute even though Attorney Doe had received and possessed the BWC Video Evidence. AC ¶¶ 185–94. That is not a neutral charging theory. It is an allegedly distorted narrative that strips Plaintiff's statements of

16

the factual context necessary to determine whether they served legitimate advocacy, credibility, due process, and prosecutorial purposes. *See Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1038 (1991) (the court is "compelled to examine for itself the statements in issue *and the circumstances under which they were made.*") (emphasis added).

The alleged disparate treatment of the cross-grievances confirms the point. Plaintiff's cross-grievance arose from the same events, the same discovery evidence, the same hearing, and the same credibility dispute. It alleged that Attorney Doe created a false discovery dispute, filed frivolous sanctions motions, made false statements and material omissions, failed to correct the record, and filed a groundless grievance for the purpose of harassing and burdening Plaintiff. AC ¶¶ 135–38. Yet the ADO allegedly docketed Attorney Doe's grievance against Plaintiff, failed to treat Plaintiff's cross-grievance as a grievance for approximately two years, declined to pursue it without meaningful investigation, and proceeded against Plaintiff while the central evidence bearing on Attorney Doe's credibility was lost or unpreserved. AC ¶¶ 141–44, 155–66. Selective pursuit of one side of a mutually dependent credibility dispute is a classic basis for inferring non-neutral enforcement.

At the motion-to-dismiss stage, Plaintiff need not prove bad faith conclusively. She must plead specific facts supporting a plausible inference that the exception applies. She has done so. The Amended Complaint alleges a prosecution under an allegedly inapplicable and uniquely broad speech rule; the charging of truthful courtroom advocacy made in response to sanctions motions and accusations of prosecutorial misconduct; a two-and-one-half-year delay; shifting theories; an undocketed added charge; selective non-enforcement against Attorney Doe; failure to obtain or preserve central evidence; opposition to forensic inquiry; a one-sided Notice omitting material facts; and the absence of a timely state forum with authority to resolve Plaintiff's federal constitutional claims. Taken together, those allegations plausibly establish bad faith,

17

retaliation, selective enforcement, and an inadequate state forum. *Younger* abstention therefore should be denied.

### B.    Eleventh Amendment and *Ex parte Young*

Defendants also invoke the Eleventh Amendment. Again, the governing standard is the federal Rule 12(b)(1) standard. The Eleventh Amendment generally bars suits in federal court against a State or an arm of the State absent waiver or valid congressional abrogation. But *Ex parte Young* permits suits against state officials in their official capacities for prospective declaratory or injunctive relief to stop ongoing or threatened violations of federal law. *Ex parte Young*, 209 U.S. 123, 159–60 (1908); *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002).

The *Ex parte Young* inquiry is "straightforward." It asks whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective. *Verizon Md.*, 535 U.S. at 645; *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 255 (2011). The Court does not decide, at this threshold stage, whether the plaintiff will ultimately prevail on the constitutional claim. It asks only whether the claim is directed at future compliance with federal law rather than compensation or reparation for past injury.

Prospective relief is not rendered retrospective merely because the challenged enforcement began in the past. Relief remains prospective where it seeks to prevent future enforcement, future disciplinary proceedings, future application of an allegedly unconstitutional rule, or ongoing legal consequences. See *Town of Barnstable v. O'Connor*, 786 F.3d 130, 141 (1st Cir. 2015). Here, Plaintiff sues Defendants in their official capacities and seeks prospective relief preventing future enforcement of N.H. Rule of Professional Conduct 4.4(a) against her in the disciplinary matter and in any future proceeding based on the same facts. Taking the Amended Complaint's allegations as true, that relief fits within *Ex parte Young* because it is directed at an ongoing and threatened application of state law in violation of the First and Fourteenth

18

Amendments. To the extent Defendants contend that some discrete requested remedy is retrospective, that argument at most concerns the scope of available relief; it does not require dismissal of Plaintiff's prospective federal constitutional claims.

Defendants' Eleventh Amendment argument fails because Plaintiff does not seek damages, restitution, or retrospective monetary relief from the State. Plaintiff sues state officials in their official capacities and seeks declaratory and prospective injunctive relief to stop the future enforcement of a disciplinary rule she alleges is unconstitutional. That is precisely the office of *Ex parte Young*.

Plaintiff's Amended Complaint alleges ongoing violations of federal law. The ADO has charged Plaintiff under Rule 4.4(a), the disciplinary proceeding is pending (but stayed), and Defendants maintain authority to prosecute, adjudicate, administer, and enforce that charge. The stay of the disciplinary proceeding does not eliminate the ongoing violation; it confirms that the proceeding remains live and capable of resumption. Defendants themselves acknowledge that the disciplinary proceeding is stayed only because of this federal action and that the Hearings Committee remains ready to resume the matter. The constitutional injury is therefore not a completed past event.

The relief Plaintiff seeks is also prospective. Plaintiff asks this Court to declare Rule 4.4(a) unconstitutional on its face and as applied and to issue preliminary and permanent injunctions prohibiting Defendants from "investigating, enforcing, and administering the enforcement" of Rule 4.4(a) against her in the disciplinary matter and any future matter based on the same facts. That relief is directed at what Defendants may do going forward. It would not impose liability on the State treasury. It would not order compensation for a completed injury. It would not require repayment of money, return of property, or damages. It would simply prevent state officials from continuing to apply an unconstitutional rule to Plaintiff.

The court's ruling in *Cotto v. Campbell* does not support Defendants' immunity argument. 126 F.4th 761, 767 (1st Cir. 2025). In *Cotto*, the First Circuit held that *Ex parte Young* did not apply because the

plaintiffs sought relief for a completed past wrong—recovery of forfeited property connected to convictions that had already been vacated—and there was no ongoing violation to enjoin. *Cotto,* 126 F.4th at 767, 771. The First Circuit emphasized that *Ex parte Young* remains available when a plaintiff alleges an ongoing violation of federal law and seeks prospective relief. *Id.* at 767. This case fits squarely with *Cotto's* statement of the continuing availability of *Ex parte Young.* Plaintiff is not asking the Court to compensate her for past harm. She asks the Court to stop a pending (but, again, stayed) disciplinary prosecution and future enforcement of Rule 4.4(a) that continues to chill her protected advocacy and violate due process.

Nor is this case controlled by decisions barring purely retrospective declaratory relief. A declaration is impermissibly retrospective when it seeks only a pronouncement that state officials acted unlawfully in the past and no ongoing violation remains. *See Green v. Mansour*, 474 U.S. 64, 68–73 (1985). But declaratory relief is permissible when it is tied to prospective injunctive relief and determines whether state officials may continue enforcing challenged state action. *Verizon*, 535 U.S. at 645–46. Plaintiff's requested declarations are not abstract historical pronouncements. They would determine whether Defendants may enforce Rule 4.4(a) against her and would support prospective injunctive relief barring that enforcement.

Defendants' reliance on the fact that some relevant events occurred in the past also misses the point. Most constitutional challenges to agency action arise after the challenged action has already occurred. That does not make the relief retrospective where the plaintiff seeks to prevent continuing enforcement or future legal consequences. The First Circuit has recognized this distinction: "The fact that [the agency order] occurred in the past therefore does not itself push the complaint outside the confines of the *Ex parte Young* doctrine." *O'Connor*, 786 F.3d at 141. Here, the Notice of Charges may have been issued in the past, but the enforcement proceeding remains pending, and Defendants continue to assert authority to prosecute and administer it.

20

*Whole Woman's Health v. Jackson*, likewise does not bar Plaintiff's claims. 595 U.S. 30 (2021). That case distinguished between state-court judges and clerks, who generally adjudicate disputes rather than enforce laws, and state executive officials, who may enforce laws. *Id*. at 39–40. Plaintiff does not ask this Court to enjoin a state court from hearing cases in the abstract. She seeks relief against officials charged with receiving, docketing, prosecuting, adjudicating, administering, and enforcing attorney discipline proceedings under Rule 4.4(a). At a minimum, Defendants Moushegian and Greene are enforcement officials within the meaning of *Ex parte Young* because the Amended Complaint alleges that the ADO, through General Counsel and Disciplinary Counsel, receives, evaluates, investigates, dockets, assesses, and prosecutes professional conduct complaints. As to the remaining official-capacity defendants, Plaintiff seeks relief only to the extent they administer and enforce Rule 4.4(a); the Eleventh Amendment does not require dismissal of Plaintiff's prospective claims.

Finally, Defendants' categorical statement that official-capacity claims are claims against the State is incomplete. *Will v. Michigan Department of State Police* recognizes the general rule, but it also preserves *Ex parte Young*: state officials sued in their official capacities for prospective relief are proper defendants because such actions are not treated as actions against the State. 491 U.S. 58, 71 n.10 (1989) (citing *Kentucky v. Graham,* 473 U.S. 159, 167, n. 14 (1985)). Defendants concede the existence of that exception. Plaintiff's Amended Complaint fits squarely within it.

Accordingly, the Eleventh Amendment does not bar Plaintiff's claims for declaratory and prospective injunctive relief. At most, if the Court concludes that any discrete portion of the prayer for relief is retrospective, the proper course would be to limit that particular remedy—not to dismiss the federal constitutional claims or the requested injunction against future enforcement of Rule 4.4(a).

21

### C.        Neither Rule-Based Nor Prosecutorial Immunity Justifies Dismissal

Defendants' final immunity argument fails because it addresses a case Plaintiff did not bring. Defendants invoke New Hampshire Supreme Court Rule 37(7), which states that participants in the attorney-discipline system are immune from "civil liability" for conduct arising from their disciplinary duties, and they separately invoke prosecutorial immunity on the theory that Disciplinary Counsel performs prosecutorial functions. But Plaintiff does not seek damages from Defendants in their individual capacities. She sues state officials in their official capacities and seeks declaratory and prospective injunctive relief against the ongoing and threatened enforcement of an unconstitutional disciplinary rule. AC ¶¶ 15, 20–22; Prayer for Relief ¶¶ 1–4. The Amended Complaint expressly seeks declarations that Rule 4.4(a) violates the First and Fourteenth Amendments and injunctions prohibiting Defendants from investigating, enforcing, or administering Rule 4.4(a) against Plaintiff in the disciplinary matter and future matters based on the same facts. Neither Rule 37(7) nor prosecutorial immunity bars that form of relief.

*First*, Rule 37(7) is a state-law immunity provision. Defendants emphasize that New Hampshire court rules have the "force and effect of law," but that premise defeats rather than supports their argument. A state-law immunity rule cannot extinguish a federal cause of action or bar prospective relief authorized by federal law. The Supreme Court has repeatedly held that "a state law that immunizes government conduct otherwise subject to suit under § 1983 is pre-empted," and that States possess "no authority to override" Congress's decision to provide a federal remedy for violations of federal rights. *Williams v. Reed*, 604 U.S. 168, 174–76 (2025); see also *Howlett v. Rose*, 496 U.S. 356, 375–78 (1990); *Martinez v. California*, 444 U.S. 277, 284 n.8 (1980). Rule 37(7), even if fully valid as a matter of state law, cannot make the enforcement of an unconstitutional rule immune from federal review.

*Second*, Rule 37(7) immunizes only from "civil liability." Plaintiff seeks no personal monetary liability from any Defendant. A prospective injunction requiring state officials to conform future conduct to

22

federal law is not an award of damages, a civil penalty, or personal liability. Under *Ex parte Young*, 209 U.S. 123 (1908), federal courts may grant prospective relief against state officials who are enforcing or threatening to enforce unconstitutional law. The First Circuit applies the familiar "straightforward inquiry": whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective. See *Cottol*, 126 F.4th at 767; *Verizon,* 533 U.S. at 645. Plaintiff's claims satisfy that inquiry. The ADO has filed a Notice of Charges under Rule 4.4(a), the disciplinary proceeding remains pending, and Plaintiff seeks to prevent future enforcement of that rule against her. AC ¶¶ 171–73; Prayer for Relief ¶ 4.

*Third*, Defendants' argument would render *Ex parte Young* a nullity in attorney-discipline cases. If a state could insulate unconstitutional disciplinary enforcement simply by adding an immunity clause to its court rules, federal constitutional review would depend on the very state rule being challenged. That is not federal law. The Supreme Court rejected that premise in the attorney-discipline context in *Supreme Court of Virginia v. Consumers Union of United States, Inc.*, 446 U.S. 719 (1980). There, the plaintiffs brought a §1983 action challenging state bar disciplinary rules and sought declaratory and injunctive relief against their enforcement. The Court held that although the Virginia Supreme Court and its members enjoyed legislative immunity for promulgating bar rules, they were proper defendants in their enforcement capacities because they had authority to initiate disciplinary proceedings. *Id*. at 734–37. The Court specifically held that enforcement officials are proper defendants in suits for declaratory and injunctive relief "just as other enforcement officers and agencies are." *Id.* at 736.

*Consumers Union* is controlling in principle. Plaintiff challenges the constitutionality of an attorney-disciplinary rule and seeks prospective relief against officials responsible for administering and enforcing that rule. The ADO's General Counsel receives, evaluates, investigates, and dockets disciplinary complaints; Disciplinary Counsel assesses and prosecutes them; the Hearing Panel and PCC participate in adjudication

23

and discipline. AC ¶¶ 20–22. Those are enforcement and administration functions. Rule-based immunity cannot transform those officials into nonparties for purposes of prospective federal relief.

The prosecutorial-immunity argument fails for the same reason. Absolute prosecutorial immunity is a damages immunity. *Imbler* held that prosecutors are immune from "a civil suit for damages" for conduct intimately associated with initiating and presenting the State's case. *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976). Defendants' own cited New Hampshire authority frames the doctrine the same way: prosecutors are absolutely immune from "suit for damages" for acts intimately associated with the judicial process. *Belcher v. Paine*, 136 N.H. 137, 144–45 (1992). But the doctrine does not create a roving exemption from declaratory or prospective injunctive relief.

Again, *Consumers Union* is dispositive. The Supreme Court explained that "[p]rosecutors enjoy absolute immunity from damages liability," but they remain "natural targets for § 1983 injunctive suits" because they are the officials who threaten to enforce and do enforce the law. *Consumers Union*, 446 U.S. at 736–37. The Court further warned that if prosecutors and enforcement personnel could not be sued for declaratory relief, putative plaintiffs would have to wait for state proceedings before asserting federal constitutional claims—which is "not the way the law has developed." *Id*. at 737.  Defendants' assertion that Disciplinary Counsel performs "prosecutorial functions" therefore does not support dismissal. It confirms that Disciplinary Counsel is an enforcement official properly subject to prospective relief under *Ex parte Young*.

Nor does the functional nature of prosecutorial immunity alter the result. To be sure, courts analyze absolute immunity by function rather than title, and decisions to initiate or pursue charges are generally protected from damages suits. *See Buckley v. Fitzsimmons*, 509 U.S. 259, 269–73 (1993); *Imbler*, 424 U.S. at 430–31. But Plaintiff is not attempting to impose personal damages for a past charging decision. She alleges that Defendants are presently administering and enforcing a facially unconstitutional and unconstitutionally

24

vague speech restriction. AC ¶¶ 241–270. That claim seeks to end an ongoing constitutional violation, not to compensate Plaintiff for past acts. Prosecutorial immunity, therefore, has no application.

At most, Defendants' immunity arguments could bear on discrete remedies, not dismissal of the action. For example, if the Court were to conclude that one item of requested relief—such as annulment or removal of records—requires additional remedial tailoring, that would not eliminate Plaintiff's claims for declaratory relief or her request for an injunction prohibiting future enforcement of Rule 4.4(a). The availability of one remedy is not the measure of whether the Complaint states a claim. Here, Plaintiff has pleaded ongoing enforcement of Rule 4.4(a), continuing chill of protected prosecutor speech, and threatened professional discipline under an unconstitutional standard. AC ¶¶ 210, 241–270. Those allegations are sufficient to defeat dismissal.

Accordingly, neither Rule 37(7) nor prosecutorial immunity bars this action. State-law immunity cannot preempt § 1983, "civil liability" immunity does not apply to prospective relief, and prosecutorial immunity protects against damages—not suits seeking to enjoin ongoing unconstitutional enforcement. Defendants' immunity arguments therefore provide no basis to dismiss the Complaint.

## VI.    CONCLUSION

At bottom, this case concerns whether the State may subject an attorney—and specifically a prosecutor defending herself and the State in open court against sanctions motions—to disciplinary prosecution for truthful, responsive advocacy based on a retrospective and subjective determination that the speech had a "primary purpose" to embarrass opposing counsel. The Constitution does not permit that result. Plaintiff has stated claims upon which relief may be granted, and this Court has jurisdiction to adjudicate them. Accordingly, Plaintiff respectfully requests that the Court deny Defendants' Joint Motion to Dismiss, retain jurisdiction over this action, and grant such further relief as justice may require.

Respectfully submitted,

LEHMANN MAJOR LIST, PLLC

May 26, 2026                         /s/Richard J. Lehmann
                                     Richard J. Lehmann (Bar No. 9339)
                                     6 Garvins Falls Road)
                                     Concord, N.H. 03301
                                     (603) 731-5435
                                     rick@nhlawyer.com

                                     CLEVELAND, WATERS AND BASS

                                     /s/Jacob M. Rhodes
                                     Jacob Rhodes (Bar No.274590)
                                     Two Capital Plaza, 5th Floor
                                     Concord, N.H. 03301
                                     (603) 224-7761
                                     rhodesj@cwbpa.com


        -AND-


                                     CAMPBELL CONROY & O'NEIL, P.C.

                                     Thomas C. Frongillo (BBO No. 180690)
                                     (pro hac vice)
                                     20 City Square, Suite 300
                                     Boston, MA 02129-3733
                                     (617) 241-3000
                                     tfrongillo@campbell-trial-lawyers.com

DATE:                                *Attorneys for Plaintiff Elena Ben David*

## CERTIFICATE OF SERVICE

        I hereby certify that an electronic copy of the within document was served upon all counsel

of record through the court's ecf-filing system.

May 26, 2026                         /s/ Jacob M. Rhodes
                                     Jacob M. Rhodes, Esq.



4931-5909-2399, v. 2



26