UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Elena Ben David

v. Civil No. 25-cv-278-JL-AJ
Opinion No. 2026 DNH 150

Brian R. Moushegian, et al.

**MEMORANDUM ORDER GRANTING MOTION TO DISMISS**

Before the court is a motion to dismiss, on abstention and other grounds, a free speech and due process challenge to a New Hampshire attorney discipline action. The plaintiff Elena Ben David, a respondent in an ongoing state attorney discipline proceeding, brings claims against various officials in the Attorney Discipline Office of the New Hampshire Supreme Court, seeking declaratory and injunctive relief on the grounds that the state proceeding violates her rights under the First and Fourteenth Amendment of the U.S. Constitution. The state defendants move to dismiss this lawsuit under, *inter alia*, the *Younger* abstention doctrine. The court has jurisdiction under 28 U.S.C. § 1331 (federal question).

After considering the parties' written submissions and hearing oral argument, the court grants the motion to dismiss. Because the plaintiff can raise the same federal constitutional issues as defenses in the pending state proceeding, "principles of equity and comity" under the *Younger* abstention doctrine behoove this court to abstain from entertaining the lawsuit. *See Sirva Relocation, LLC v. Richie*, 794 F.3d 185, 191 (1st Cir. 2015) (citing *Younger v. Harris*, 401 U.S. 37, 43-46 (1971)).

## I. Applicable legal standard

A defendant may move to dismiss for the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).[1] On a motion to dismiss, a court takes a plaintiff's factual allegations in the complaint as true, and draws all reasonable inferences from those facts in the plaintiffs' favor. *See Martino v. Forward Air, Inc.*, 609 F.3d 1, 2 (1st Cir. 2010). "The relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw from the facts alleged in the complaint." *Ocasio-Hernández v. Fortuno-Burset*, 640 F.3d 1, 13 (1st Cir. 2011). "If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture," dismissal is appropriate. *Newman v. Lehman Bros. Holdings Inc.*, 901 F.3d 19, 25 (1st Cir. 2018) (internal quotations omitted).

## II. Background

For purposes of this order, the court recites the relevant facts from the plaintiffs' operative complaint, accepts those facts as true, and draws all reasonable inferences from those facts in the plaintiffs' favor. *See Forward Air*, 609 F.3d at 2. The court omits

[1] Ben David argues that *Younger* abstention is a question of subject matter jurisdiction under Rule 12(b)(1) standard. Obj. Mot. Dismiss (doc. no. 30) at 8. For the purposes of this order, this is a distinction without a difference, because both Rule 12(b)(1) and 12(b)(6) require a court to "accept the Complaint's well-pleaded factual allegations as true and draw all reasonable inferences in Plaintiff's favor," and to refrain from resolving disputed factual issues or rejecting plausible allegations in the complaint. *Id.* (citing *Torres-Negrón v. J & N Records, LLC*, 504 F.3d 151, 162–63 (1st Cir. 2007) and *Valentin v. Hosp. Bella Vista*, 254 F.3d 358, 363 (1st Cir. 2001)).

several facts alleged in the complaint and discusses only the background relevant to disposition of the motion to dismiss.

### a. Factual and procedural background

The case arises out of a disciplinary proceeding under the New Hampshire Supreme Court attorney discipline system. The plaintiff, the subject of the proceeding, was an Assistant County Attorney in the Hillsborough County Attorney's Office and a member of the New Hampshire bar. The state disciplinary proceeding arose from remarks the plaintiff made during a "dispositional conference" in a criminal case before the Hillsborough County Superior Court. Prior to the conference, the state criminal defense counsel, Attorney Doe, filed two motions in quick succession to compel discovery of body-worn camera footage, both of which called for the court to sanction Ben David for not producing the footage. These motions were entirely unnecessary: Ben David's office and the relevant law enforcement agency had provided Attorney Doe with multiple links to access the footage before he filed either motion to compel, a fact which no party disputes in any of the proceedings, and which the court accepts as true.[2]

At the dispositional conference, which took place in December 2022, the Superior Court judge suggested that the parties engage in mediation to resolve the criminal case. Ben David objected to mediation in part because she suggested that the working

---

[2] *See* Notice of Charges (doc. no. 12-12) at 9 (noting that Attorney Doe admitted in an email to Ben David and in a filing to the Superior Court that he had in fact received a link to the footage before filing his motions to compel but had inadvertently deleted it). Plaintiff married in 2024 and changed her surname from "Brander" to "Ben David." She is referenced in many of the exhibits to the complaint, including the transcript of the dispositional conference and the Notice of Charges, as Elena Brander. *See* Am. Compl. 2 n.1.

relationship between her and Attorney Doe would make mediation unproductive, citing, as evidence of the negative tenor of their working relationship, the still-pending (at that time) discovery and sanctions motions Attorney Doe filed even after receiving multiple links to the discovery he sought.[3] She proceeded to make several remarks concerning Attorney Doe's professional character, even after the court made clear that it would rule in her favor on the discovery and sanctions dispute,[4] and while the court repeatedly told her to stop.[5] For instance, the transcript of the hearing shows Ben David stating:

- "And I have asked Attorney [Doe] numerous times, please, when you email the state for discovery, please email me, not my assistant…For the record, [Attorney Doe] has made an assistant in our office cry in the past";[6]
- "And something else that I think is important for the court to note is Attorney [Doe] was recently reprimanded because his trust account was out of compliance by $15,000";[7] and

---

[3] Dispositional Conf. Tr. (doc. no. 12-7) at 10:14-11:1 ("Your Honor, I'd respectfully ask that it be done in any other case. Currently, I don't know how closely the court has looked at Attorney [Doe]'s most recent pleadings…that might change the court's opinion as to whether any discussion of mediation or any litigation that may not be necessary in this case is worth the State's and the Court's resources.").
[4] *See id.* at 21:20 ("COURT: Well he has [the requested discovery] now, so."); 22:20-23 ("[Ben David]: And there's something else, Your Honor. COURT: Hold on. Hold on. I just don't know that that's going to be productive in this…in this dispute"); 25:2-3 ("COURT: I'm going to deny both Motions for Sanctions."). After the hearing the court dismissed Attorney Doe's discovery motions as moot and denied his motions for sanctions. Notice of Charges (doc. no. 12-12) at 9.
[5] *See, e.g.* Dispositional Conf. Tr. (doc. no. 12-7) at 27:11-12 (COURT: Can you stop interrupting me please); 31:19-21 (COURT: No, we're done. We're done on the issue. I've given you ample time to lay out your position on this."); 32:1-8 ("COURT: No. Counsel I'm not going to – we're not going to get back into this….No, we're not going to get into that.").
[6] *Id.* at 16:17-22.
[7] *Id.* at 24:4-7.

- "I just wonder if the court is aware of which circumstances under which Attorney [Doe] left the Hillsborough County Attorney's Office."[8]

The court remonstrated with both attorneys, reminding them that "[b]oth of you are representing interests that are not yourself….and because the two of you are working so poorly with each other…neither of your respective clients, the State on your part, or the defendant, are being served."[9] In response, Ben David asked the court "what exactly the State is alleged to have done wrong,"[10] then, interrupting the court's answer, continued "[t]here's something else, Your Honor…I do think there's an important other piece of this puzzle that the court needs to know…".[11] Ben David stopped remarking about Attorney Doe's character when the court threatened to hold her in contempt.[12]

After the conference Attorney Doe filed a grievance with the ADO accusing her of violating N.H. R. Prof. Conduct 8.4. Three weeks later Ben David filed a "reply and cross-grievance" with the ADO.[13] In June 2023, the ADO informed Ben David that it was docketing Attorney Doe's grievance against her, but did not issue a formal complaint or Notice of Charges against her at the time.[14] Ben David requested a meeting with Disciplinary Counsel from the ADO's office, who told her that her conduct fell under

---

[8] *Id.* at 32:3-6.
[9] *Id.* at 25:16-26:2.
[10] *Id.* at 26: 3-4.
[11] *Id.* at 26:3-13.
[12] *Id.* at 32:10-14 ("THE COURT: We're not -- this is -- this is the mistake you keep making, which is you keep making personal attacks. Enough. Enough. Ms. Brander, I'm going to hold you in contempt if you don't stop going down this path. Are we clear?").
[13] Am. Compl. at ¶ 135.
[14] *Id.* at ¶ 141.

Rule 4.4(a) rather than Rule 8.4.[15] In 2024, Ben David renewed her grievance against Attorney Doe.[16] The ADO declined to take any action on her grievances.[17] In March 2025 it sent her a formal Notice of Charges, alleging that her statements during the hearing violated N.H. R. Prof. Conduct 4.4(a), which prohibits a lawyer from "tak[ing] any action if the lawyer knows or it is obvious that the action has the primary purpose to embarrass, delay or burden a third person."[18]

In July 2025 Ben David brought facial and "as-applied" challenges in this court to Rule 4.4(a) and the proceeding against her under the First and Fourteenth Amendments of the U.S. Constitution, alleging that the rule is both vague and overbroad and the proceedings have abridged her right to procedural due process.[19] She alleges, *inter alia*,[20] that the ADO precluded her from pursuing discovery in a timely manner: the New Hampshire Supreme Court rules governing the attorney discipline process (N.H. Supreme Court Rules 37 and 37A) do not allow a respondent to initiate discovery until after the ADO files a Notice of Charges, which it failed to do for over two years. By the time she was allowed to conduct discovery, Ben David alleges, Attorney Doe had deleted the

---

[15] *Id.* at 169.
[16] *Id.* at ¶ 143.
[17] *Id.* at ¶ 144.
[18] Notice of Charges (doc. no. 12-12) at 10. Ben David alleges that earlier in 2024, at a statewide ethics training for the N.H. Attorney General's office, the ADO's General Counsel told prosecutors that they would not "encounter" Rule 4.4(a) because the rule proscribes a lawyer's conduct when "representing a client." *See* Am. Compl. (doc. no. 12) at ¶¶ 179-80.
[19] She simultaneously urged the New Hampshire Supreme Court to exercise original jurisdiction to hear similar claims, which it declined to do.
[20] As noted *supra*, the court does not discuss Ben David's allegations as to the full merits of her claims; instead, it discusses only those allegations relevant to the motion to dismiss.

email showing when he had received the link to the BWC footage, despite having received a "Notice to Preserve Evidence."[21]

Ben David also alleges that the ADO seeks to prevent her from presenting evidence in the disciplinary proceeding regarding her rights and defenses, namely, evidence regarding the context of Ben David's remarks, relevant under *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1039 (1991) to her First Amendment defense.

In November 2025, the ADO moved to dismiss Ben David's claims in this court.[22] Ben David then filed an Amended Complaint, adding as defendants to this lawsuit members of the Hearings and Professional Conduct Committees sitting on her case.[23] At oral argument, counsel for the state defendants represented that, in response to being named as defendants in this lawsuit, the Hearings Committee stayed the disciplinary proceedings against Ben David.[24] The state defendants then filed a new motion to dismiss.[25]

The court held oral argument on the motion on August 7, 2026, a Friday. On the following Tuesday, August 11, Ben David filed a notice of changed facts, informing the court that August 7 had been her last day as an Assistant County Attorney in the

---

[21] Am. Compl. (doc. no. 12) at ¶¶ 117-122. Ben David characterizes this as a failure both by Attorney Doe and by the ADO to "preserve or obtain the November 28, 2022 e-mail at the center of the discovery dispute [] despite a preservation request." Obj. Mot. Dismiss (doc. no. 30) at 6.
[22] Mot. Dismiss (doc. no. 8).
[23] Am. Compl. (doc. no. 12).
[24] *See also* Obj. Mot. Dismiss (doc. no. 30) at 19 ("the disciplinary proceeding is stayed only because of this federal action and [] the Hearings Committee remains ready to resume the matter.").
[25] Mot. Dismiss (doc. no. 28).

Hillsborough County Attorney's Office.[26] Instead, as of August 10, 2026, she is an attorney in the United States Department of Justice Civil Rights Division.

### b. New Hampshire's attorney discipline process

The New Hampshire Supreme Court and its Attorney Discipline System exercise disciplinary jurisdiction over attorneys admitted to practice law in New Hampshire, applying the New Hampshire Supreme Court's Rules of Professional Conduct. *See* N.H. Supreme Court Rule 37(1)(b).

The ADO, led by its General Counsel, is a division of the Supreme Court's administrative office. *See* Rule 37(1). The General Counsel's office receives and investigates professional conduct complaints, after which it has the discretion to terminate or dismiss a complaint, refer it to the disciplinary counsel for a hearing, or divert an attorney out of the Attorney Discipline System. *See* Rule 37(6). The Complaint Screening Committee, a separate body from the ADO, consists of ten members and has similar powers to dismiss or refer complaints, or to divert attorneys out of the discipline system. Rule 37(5).

The disciplinary counsel, an officer within the ADO, "perform[s] prosecutorial functions" and has the power to review complaints, contact witnesses and conduct discovery, prepare complaints for hearings, try cases before the Hearings Committee, appear before the Professional Conduct Committee, and represent the ADO and the PCC before the New Hampshire Supreme Court. Rule 37(6)(f). If the General Counsel or

[26] Notice Changed Facts (doc. no. 38).

Complaint Screening Committee refer a complaint to the disciplinary counsel, she begins the formal disciplinary process by filing a Notice of Charges setting forth "the allegations of misconduct against the respondent and the disciplinary rules alleged to have been violated." Rule 37A(III)(b)(2). Once the disciplinary counsel files a Notice of Charges, the respondent may file an answer and conduct discovery. Rule 37A(III)(b)(3) & (5). The respondent's answer should respond to each allegation and assert all affirmative defenses. *See* Rule 37A(III)(b)(3)(B).

The Hearings Committee, made up of lawyers and non-lawyers, initially hears cases. Rule 37(4). Hearings may include evidence, witnesses, and expert witnesses. Attorneys for both parties (the ADO and the accused respondent) may examine and cross-examine witnesses. Rule 37A(III)(c)(4). Although formal rules of evidence do not apply, the Hearings Committee may make rulings on the admissibility of evidence. After hearing the evidence the Hearings Committee writes a report with its findings of fact and law,[27] a recommendation of whether its findings "support a conclusion that the rules of professional conduct were violated by clear and convincing evidence," and an appropriate sanction. Rule 37A(III)(d)(1). The Professional Conduct Committee, also made up of lawyers and non-lawyers, hears oral argument and reviews the report, hearing transcript and any memoranda filed by the parties before determining "whether there is clear and convincing evidence of violations of the rules of professional conduct." Rule

[27] *See* Rule 37A(III)(d)(2)(C)(i) (The PCC shall "[r]eview the hearing panel's report addressing any contested matters of fact and law. The committee shall uphold the hearing panel's findings of fact unless clearly erroneous or manifestly in error. The committee shall review the hearing panel's conclusions of law and recommendation of sanction *de novo*.").

37A(III)(d)(2)(C). If the PCC finds a violation, it issues a sanction. If the PCC recommends a sanction involving a suspension of longer than six months, it must give notice of its findings and recommendation to the New Hampshire Supreme Court, which must make the ultimate finding in imposing such a sanction. A respondent or the disciplinary counsel may appeal any finding or sanction imposed by the PCC to the New Hampshire Supreme Court, but appeals of lesser sanctions, including reprimands or suspensions of less than six months, are not mandatory and the Supreme Court may decline to hear them. Rule 37A(III)(d)(4)(A).

## III. Analysis

The ADO argues that Ben David's claims are barred by the *Younger* abstention doctrine, the Eleventh Amendment, and prosecutorial immunity. Because the court dismisses the case, without prejudice, based on *Younger* abstention, it does not address the other potential grounds for dismissal, on which Ben David advances more meritorious arguments.

"[P]rinciples of equity and comity demand that a federal court abstain from entertaining a suit that seeks to enjoin a state [proceeding] as violative of federal law so long as the state proceeding affords an adequate opportunity to raise the federal defense and abstention will not cause irreparable harm." *Sirva Relocation, LLC v. Richie*, 794 F.3d 185, 191-92 (1st Cir. 2015) (citing *Younger v. Harris*, 401 U.S. 37, 43-46 (1971)); *see also* *Netflix, Inc. v. Babin*, 88 F.4th 1080, 1090 (5th Cir. 2023) ("Fidelity to [principles of federalism], as articulated in the canonical case of *Younger v. Harris*, often requires us to abstain from interfering with a pending state criminal proceeding, even

when it implicates a defendant's federal constitutional rights . . . by asking a federal court to exercise its extraordinary equitable powers amidst an ongoing state proceeding, the plaintiff must come with equally extraordinary allegations."). Besides state criminal prosecutions, the abstention doctrine extends to "civil proceedings that are akin to criminal prosecutions," and proceedings "that implicate a State's interest in enforcing the orders and judgments of its courts." *Sirva Relocation*, 794 F.3d at 192.

Invoking *Younger* abstention requires a three-step approach. *Id.* at 192. First, a federal court must find that the state proceeding "falls within the *Younger* taxonomy," namely, that it is the type of state proceeding to which *Younger* may attach. *Id.* at 192-93. Next it must consider whether the "ongoing state judicial proceeding, instituted prior to the federal proceeding…implicates an important state interest, and [] provides an adequate opportunity for the plaintiff to raise the claims advanced in his federal lawsuit." *Id.* at 193; *Brooks v. New Hampshire Supreme Ct.*, 80 F.3d 633, 638 (1st Cir. 1996) (citing *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423 (1982)). Having found that *Younger* abstention may lie, a court should nevertheless decline to invoke it where "a state proceeding is brought in bad faith," "the state forum provides inadequate protection of federal rights," or a state statute at issue is "flagrantly and patently violative of express constitutional prohibitions." *Sirva Relocation*, 794 F.3d at 192.

**a. *Younger* abstention**

The Supreme Court and the First Circuit Court of Appeals have both applied *Younger* abstention to state attorney discipline hearings. *See Brooks v. New Hampshire*

*Supreme Ct.*, 80 F.3d at 638; *Middlesex County Ethics Comm.*, 457 U.S. 423 at 435. These cases create strong precedent rather than a categorical rule, but even without this precedent the court would find that the disciplinary proceedings against Ben David fall within a category of cases to which *Younger* abstention may attach. The attorney discipline process in New Hampshire resembles a "criminal prosecution in important respects." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 79 (2013) (internal quotation marks omitted). It is an enforcement of the New Hampshire Supreme Court's Rules of Professional Conduct against an attorney alleged to have violated them. The enforcement action against Ben David was "initiated to sanction [her], *i.e.,* the party challenging the state action, for some wrongful act." *See id.* The state defendants in the case are parties to the state proceeding and initiated it. *See id.* The state actors initiated an investigation and that investigation culminated in the filing of a formal charge against Ben David. *See id*. at 79-80.

**b. <u>Middlesex factors</u>**

Ben David contests two aspects of the *Middlesex* factors: first, that the posture of the state proceeding is material, and second, that the state proceeding provides an adequate opportunity for the plaintiff to raise the claims advanced in the federal lawsuit. She does not contest the State's "extremely important interest in maintaining and assuring the professional conduct of the attorneys it licenses," especially those "involved in the administration of criminal justice." *Middlesex County Ethics Comm.*, 457 U.S. 423 at 434.

***Ongoing proceeding and state interest.*** The state proceeding against Ben David is stayed pending resolution of this lawsuit,[28] which, she argues, distinguishes her case from *Brooks* and *Middlesex*, where the state proceedings were, in theory, ongoing or in more advanced stages.[29] But Ben David cites no authority for the proposition that a stay in the state court proceedings precludes or should preclude abstention. Moreover, Ben David's state proceeding was active—parties had filed motions in limine in preparation for a scheduled hearing—before Ben David amended her complaint in this case to add the Hearings Committee as defendants to this suit.[30] Only then did the Hearings Committee stay the discipline proceedings.[31]

*Younger* abstention is not merely a doctrine of efficiency. "The underlying reason for restraining [federal] courts" is the "vital consideration…of comity," which entails "a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments," and a "belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." *Younger*, 401 U.S. at 44. The stay in no way diminishes these considerations, particularly as the Hearings Committee only issued it upon being named as defendants in this lawsuit. Any value the stay might have in promoting efficiency by obtaining federal adjudication of an "antecedent" constitutional

[28] Notice of Stay (doc. no. 21).
[29] Obj. Mot. Dismiss (doc. no. 30) at 11.
[30] Based on representations made by counsel at oral argument.
[31] *See id.* at 19 ("the disciplinary proceeding is stayed only because of this federal action and [] the Hearings Committee remains ready to resume the matter.")

question is outweighed by the state's "extremely important interest in maintaining and assuring the professional conduct of the attorneys it licenses," particularly those "involved in the administration of criminal justice." *See Middlesex County Ethics Comm.*, 457 U.S. 423 at 434. As in *Middlesex*, considerations of comity and the importance of the state's interests favor "afford[ing] [the state] the opportunity to interpret its rules in the face of a constitutional challenge." *Id.* at 429.[32]

***Adequacy of the state proceeding.*** "Except in the most extraordinary cases, a federal court must presume that state courts…are fully competent to adjudicate federal constitutional and statutory claims properly presented by the parties." *Casa Marie, Inc. v.Super. Ct. of P.R.,* 988 F.2d 252, 262 (1st Cir.1993). Ben David argues that the attorney discipline proceedings are inadequate because (i) before receiving the Notice of Charges she had no mechanism to compel discovery, move to dismiss, or challenge the constitutionality of Rule 4.4(a); and (ii) the Hearing Panel, as an administrative arm of the Supreme Court, lacks the power to declare Rule 4.4(a) unconstitutional, and review by the New Hampshire Supreme Court is only guaranteed for certain disciplinary outcomes and not others, so the "disciplinary process can proceed without any judicial officer ever resolving the facial constitutional issue."[33]

---

[32] Ben David's reliance on *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans* for the proposition that "there is no doctrine that the availability or even the pendency of state judicial proceedings excludes the federal courts" is misplaced. *See* 491 U.S. 350, 373 (1989) ("NOPSI"). *Younger* does not function as a categorical bar, requiring abstention any time there is a pending state proceeding. Instead it is a rule that prevents federal courts from unduly interfering in state proceedings in certain specific circumstances. The suit at issue in NOPSI was "no more than a state-court challenge to completed legislative action," so the pendency of the state proceeding did not affect the Court's decision not to abstain. *Id.*

[33] Obj. Mot. Dismiss (doc. no. 30) at 10, 12.

Discovery. The disciplinary process against Ben David is not rendered inadequate because she was unable to begin litigating her case before the ADO filed a formal Notice of Charges against her. Even as a defendant in a federal case, she would have had to wait for a formal complaint or charges were filed against her before she could engage in discovery, move to dismiss, or raise federal constitutional defenses. Ben David does not allege that there are no mechanisms by which she can obtain discovery and defend her case, including by raising her constitutional claims, only that she was not able to access those mechanisms until the rules allowed her to do so, with the filing of the formal Notice. Ben David emphasizes the importance of discovery to allow defendants in state proceedings to contextualize their regulated speech under *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1038 (1991).[34] Without discounting that importance, nor the potential ramifications that the ADO's alleged delay in bringing charges against her may have for her ability to contextualize her statements, Ben David does not allege, nor is there reason to believe, that the Hearings Committee, PCC, or New Hampshire Supreme Court would refuse to hear her arguments on the allegedly inadequate discovery, including that the ADO's discovery practice fatally hindered her ability to mount a defense.

Mandatory review. Ben David argues that the Hearing Panel and the PCC lack the authority to declare Rule 4.4(a) unconstitutional.[35] Counsel for the Hearings Committee and PCC confirmed at oral argument that the committees would not make specific rulings on Ben David's constitutional defenses, but that the issues, if raised, would be preserved

[34] *Id.* at 16-17.
[35] *Id.* at 10.

for review by the New Hampshire Supreme Court. Should the Hearing Panel and the PCC find a violation and recommend a sanction less than a six-month suspension, however, Ben David's appeal to the New Hampshire Supreme Court would not be mandatory.

Ben David cites no authority suggesting that adequacy requires a mandatory appeal to a state Supreme Court. In *Middlesex Ctny*. *Ethics Comm.*, for example, review by the state's Supreme Court demonstrated the "abundant" adequacy of a state's adjudicatory proceedings, *see* 457 U.S. at 436, but no court has made mandatory review a requirement for adequacy. The court declines to take such a position here. The New Hampshire Supreme Court retains the ultimate ability to review any findings and sanctions imposed by the Hearings Committee and PCC, even if the committees refuse to make specific findings on Ben David's constitutional defenses. S*ee* N.H. Supreme Court Rule 37A(III)(d)(1) and (2). The New Hampshire Supreme Court declined to take the extraordinary measure of exercising its original jurisdiction to hear her constitutional claims before they were adjudicated through the disciplinary proceedings, but has taken up federal constitutional challenges in other New Hampshire attorney discipline cases. S*ee, e.g.* *In re Reiner's Case*, 152 N.H. 163, 872 A.2d 1038 (2005). There is no reason to believe it would not do so here.

Nothing inherent in New Hampshire's attorney discipline process raises the suspicion that it could not adequately resolve Ben David's federal constitutional challenges. Further, it is inconceivable to this court that the New Hampshire Supreme Court, faced with constitutional challenges rejected or unaddressed by the Hearings

Committee or the PCC, would simply decline to exercise its jurisdiction to consider these arguments. And Ben David is free to contest the imposition of a sanction against her in federal court if the New Hampshire Supreme Court refuses to hear her appeal.

**c. Exceptions**

"Abstention is inappropriate…when a state proceeding is brought in bad faith, that is for the purpose of harassment," or a state statute at issue is "flagrantly and patently violative of express constitutional prohibitions." *Sirva Relocation*, 794 F.3d at 192. Ben David argues that, even if disciplinary proceeding against her otherwise fell within *Younger*'s domain, abstention is inappropriate here because she alleges that the state prosecution was brought in bad faith, and because her case involves a facial challenge under the First Amendment in which she alleges that "the disciplinary proceeding has sharply curtailed and adversely affected her professional speech."[36]

***Bad Faith.*** "[T]he 'bad faith' exception [to *Younger* abstention] is narrow and should be granted parsimoniously." *Netflix, Inc. v. Babin*, 88 F.4th 1080, 1091 (5th Cir. 2023) (quoting *Hefner v. Alexander*, 779 F.2d 277, 280 (5th Cir. 1985)).[37] "The Supreme Court has recognized the 'longstanding presumption of regularity accorded to prosecutorial decisionmaking,' and has similarly observed that 'the Government retains broad discretion as to whom to prosecute.'" *Id.* (citing *Hartman v. Moore*, 547 U.S. 250, 263 (2006) and *Wayte v. United States*, 470 U.S. 598, 607 (1985)). "Thus, a plaintiff

---

[36] *Id.* at. 13; Am. Compl. (doc. no. 12) at ¶ 210.
[37] Without adopting a standard on bad faith where the First Circuit Court of Appeals has not, the court is guided by the Fifth Circuit based on the plaintiff's suggestion at oral argument.

seeking to short-circuit the usual prosecutorial process by invoking the protection of a federal court 'may overcome the presumption of abstention' by showing 'proven harassment' or that the 'prosecutions [were] undertaken by state officials in bad faith without hope of obtaining a valid conviction.'" *Id.* (quoting *Nobby Lobby, Inc. v. City of Dallas*, 970 F.2d 82, 87 (5th Cir. 1992) (quoting *Perez v. Ledesma*, 401 U.S. 82, 85 (1971))).

At oral argument, Ben David pointed to *Nextflix* to support her allegation that the ADO brought the disciplinary charges against her in bad faith. The *Netflix* court found that several aspects of the prosecution in that case, taken together, created a "mosaic" of bad faith on the part of Babin, the state prosecutor. *See id*. at 1096. First, Babin brought initial charges against Netflix, then failed to move the case along for over a year, becoming suddenly active again only after Netflix filed a motion for habeas relief. *Id*. at 1092. Second, when Netflix moved for habeas relief, over a year after the initial charges were filed, Babin brought four more separate indictments charging more serious offenses, a "hallmark of bad faith." *Id*. at 1093. Third, the newly charged indictments involved activity (a nude scene with an actress who was over the age of 18 at the time of filming) that the prosecutor had previously stated was not part of the "gravamen" of the indictment; he brought charges based on the scene over a year after Netflix offered to provide proof that the actress was of age, which he declined. *Id*. at 1093-94. The district and appellate courts both concluded that he had "no hope of obtaining a valid conviction" on charges based on the scene. *Id*. at 1094-95.

Ben David's allegations of bad faith do not come close to the "mosaic" of conduct constituting bad faith in *Netflix*. She points first to the ADO's failure to obtain or preserve emails showing that Attorney Doe had received the discovery he sought in his discovery motions before he filed them. She argues that this failure constitutes a violation of the ADO's prosecutorial obligations under *Brady v. Maryland*, 373 U.S. 83, 87 (1963) and *Giglio v. United States*, 405 U.S. 150, 154–55 (1972) to provide her with impeachment evidence on "the complaining witness on whom the prosecution depends" and "central to the only factual dispute that gave rise to the charge."[38] The emails may very well constitute impeachment evidence on Attorney Doe. But the ADO does not deny that he received the emails, and the discovery, before he filed his second discovery motion.[39] Thus the emails have virtually no impeachment value: the parties could easily agree to the facts in a stipulation, which Attorney Doe would have no choice but to acknowledge if confronted as a witness,[40] obviating the need for the emails. And as the ADO rightly points out, there is no "factual dispute" giving rise to the charges against Ben David; the charges are based on whether her statements during the dispositional conference were appropriate, not whether they were truthful.[41]

---

[38] Obj. Mot. Dismiss (doc. no. 30) at 14-15.
[39] Mem. Mot. Dismiss (doc. no. 28-1) at 2 ("While there was some dispute as to when Attorney Doe had received and/or opened the subject discovery, Attorney Doe acknowledged, during the Conference, that he had received same *prior to the Conference*, and *prior to filing his second motion to compel*, though he claimed he was not aware that the discovery had been provided when he filed the second motion.") (emphasis in original).
[40] The need for any such impeachment is highly unlikely. Both Attorney Doe and the ADO concede that Doe filed his motion after having received the discovery.
[41] Reply (doc. no. 34) at 2.

Ben David next points to the fact that (i) the ADO's General Counsel had previously advised state prosecutors that they would not "encounter" Rule 4.4(a); (ii) the ADO charged her under a different rule—4.4 rather than 8.4—than Attorney Doe filed his grievance under; (iii) the ADO dismissed her cross-grievance against Attorney Doe; and (iv) the Notice of Charges "cherry picked three statements [while] ignor[ing] the context in which they were made [and] adopt[ing] Attorney Doe's position that his misconduct was irrelevant," as evidence of "arbitrary, selective, and retaliatory enforcement."[42] The court disagrees. That the Notice of Charges did not sufficiently contextualize her statements does not merit a finding that the ADO acted in bad faith, even if *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1038 (1991) requires an adjudicator to evaluate the context of a challenged statement. Neither does the ADO's choice to charge Ben David under Rule 4.4(a) rather than Rule 8.4. Even though the ADO told prosecutors they would not encounter Rule 4.4(a) because it involves "representing a client,"[43] the decision to charge under Rule 4.4(a) falls well within the scope of prosecutorial discretion. *See Netflix, Inc. v. Babin*, 88 F.4th at 1091 ("The Supreme Court has recognized the 'longstanding presumption of regularity accorded to prosecutorial decisionmaking,' and has similarly observed that 'the Government retains broad discretion as to whom to prosecute.'"). Other than to point to the fact that the ADO

---

[42] Obj. Mot. Dismiss (doc. no. 30) at 16.
[43] Am. Compl. (doc. no. 12) at ¶ 180. The Hillsborough County Superior Court noted that Ben David's "client" was the state: "COURT: because the two of you are working so poorly with each other…neither of your respective clients, the State on your part, or the defendant, are being served." Dispositional Conf. Tr. (doc. no. 12-7) at 25:16-26:2.

brought charges against her and not Attorney Doe, Ben David "fail[s] to suggest any reason why the defendants would want to persecute [her] or why they bore any malice towards [her]." *See Hefner v. Alexander*, 779 F.2d 277, 279–80 (5th Cir. 1985).

Instead, the ADO's actions appear to be a good faith, if delayed, attempt to hold Ben David accountable for making statements in court that, in its view, even if truthful, went beyond the bounds of acceptable advocacy. Rather than the "selective pursuit of one side of a mutually dependent credibility dispute" that Ben David makes it out to be,[44] the disciplinary action appears to accept as a given Ben David's credibility but questions her motivation and judgment. The bad faith exception "is narrow and should be granted parsimoniously." *Netflix, Inc.*, 88 F.4th at 1091. The court does not find bad faith here.

***Constitutional violation.*** The "facial invalidity of a statute is not itself an exceptional circumstance justifying federal interference with a state criminal proceeding." *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 602 (1975); *see also Younger*, 401 U.S. at 54 ("the possible unconstitutionality of a statute 'on its face' does not in itself justify an injunction against good-faith attempts to enforce it."). But "where a state statute is 'flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it,'" *Younger* abstention may not lie. *Trainor v. Hernandez*, 431 U.S. 434, 446-47 (1977) (quoting *Younger*, 401 U.S. at 53-54).

---

[44] Obj. Mot. Dismiss (doc. no. 30) at 17.

N.H. R. Prof. Conduct 4.4(a), under which Ben David faces potential discipline, does not meet this standard. The rule provides that "[i]n representing a client, a lawyer shall not take any action if the lawyer knows or it is obvious that the action has the *primary* purpose to embarrass, delay or burden a third person." N.H. R. Prof. Conduct 4.4 (emphasis added). It differs from the ABA Model Rule 4.4(a), which prohibits lawyers from using "means that have *no substantial purpose other than* to embarrass, delay, or burden a third person." (Emphasis added). Thus, as Ben David argues, New Hampshire lawyers are held to a higher standard than are lawyers whose states have adopted the Model Rule. Under the Model Rule, lawyers may use means that have a substantial purpose to embarrass, harass, or delay a third person so long as the action also has another substantial purpose. But in New Hampshire, lawyers may not take an action with the primary purpose of embarrassing, delaying, or burdening a third person, even if that action also has another substantial purpose. This may be so. But New Hampshire's departure from the Model Rule is not so "flagrantly and patently violative" that its application would be clearly unconstitutional "in whatever manner and against whomever an effort might be made to apply it." *See Trainor*, 431 U.S. at 446-47. Rather, because of the proximity between the conduct falling under the New Hampshire rule and the Model Rule, it is possible that in practice, the two rules would have substantial overlap.[45]

Ben David argues that instead of this general standard for exceptions under *Younger*, the court should apply a seemingly lower standard for constitutional challenges

[45] Ben David does not contest the constitutionality of the Model Rule.

brought under the First Amendment, namely, that abstention is inappropriate where "statutes are justifiably attacked on their face as abridging free expression." *City of Houston v. Hill*, 482 U.S. 451, 467 (1987) (declining to abstain under *Railroad Comm'n v. Pullman Co.,* 312 U.S. 496 (1941)).

The court declines to adopt this standard. First, the Court in *Hill* would have found *Pullman* abstention inappropriate "even if [the] case did not involve a facial challenge under the First Amendment" because the statute at issue there was not "susceptible to a limiting construction" that would render the constitutional issue "unnecessary" to decide. *Id*. at 468.[46] That is not the case here. As discussed, the contested Rule 4.4(a) follows in part the ABA Model Rule, which Ben David does not contest. It is possible, therefore, that the New Hampshire Supreme Court may give Rule 4.4(a) a limiting construction consistent with the uncontested Model Rule, and with federal constitutional requirements.

Second, *Younger* itself discusses "criminal prosecution under a statute regulating expression," noting that it "usually involves imponderables and contingencies that themselves may inhibit the full exercise of First Amendment freedoms," but that "this sort of 'chilling effect,' … should not by itself justify federal intervention."[47] *Younger*,

[46] The Court in *Hill* also notes that "the adequacy of state procedures is examined much more strictly in cases seeking *Pullman* abstention than in cases seeking *Younger* abstention." *Hill*, 482 U.S. at 477 n.5.

[47] Given her move out of the jurisdiction to the United States Department of Justice Civil Rights Division, a development which strongly undermines the suggestion of any stigma attached to the disciplinary action, the ongoing chill Ben David alleges to have experienced in her role as a Hillsborough County Assistant District Attorney is not a strong consideration for the court.

401 U.S. at 50. The Court notes that "procedures for testing the constitutionality of a statute 'on its face'…and for then enjoining all action to enforce the statute until the State can obtain court approval for a modified version, are fundamentally at odds with the function of the federal courts in our constitutional plan," and held that the federal courts' "vital responsibility" to "declare laws unconstitutional…does not amount to an unlimited power to survey the statute books and pass judgment on laws before the courts are called upon to enforce them." *Id.* at 52. Because *Younger* itself contemplates abstention in the face of a challenge regarding free expression, the court sees no reason to adopt a different standard here.

## IV. Conclusion

For the reasons stated above, the court GRANTS the defendants' motion to dismiss.[48] The case is dismissed without prejudice to the plaintiff's ability to reassert her claims in this court should the New Hampshire Supreme Court decline to consider her constitutional defenses. The clerk is ordered to close the case and enter judgment.

SO ORDERED.

Joseph N. Laplante
United States District Judge

Dated: October 16, 2026
Cc: Counsel of record

---

[48] Doc. no. 28.